[Nos. B229982, B233136. Second Dist., Div. Three. Sept. 5, 2012.]

OSCAR BELL et al., Plaintiffs and Appellants, v.
H.F. COX, INC., Defendant and Respondent.

COUNSEL

Lawson Law Offices, Antonio M. Lawson; Law Offices of Sheila Thomas, Sheila Y. Thomas; Law Offices of Kendra L. Tanacea and Kendra L. Tanacea for Plaintiffs and Appellants.

Sheppard, Mullin, Richter & Hampton, Charles F. Barker, Richard J. Simmons and Karin Dougan Vogel for Defendant and Respondent.

OPINION

**CROSKEY, Acting P. J.**—Oscar Bell and other truck drivers filed a class action complaint against H.F. Cox, Inc. (Cox), alleging wage and hour violations.[1] The trial court summarily adjudicated three counts in favor of Cox, a jury found in favor of Cox on another count and the trial court found that plaintiffs were exempt from federal overtime compensation requirements. Plaintiffs appeal the judgment challenging the order granting summary adjudication, the denial of their motion to exclude witnesses from testifying at trial, the court's finding on the overtime exemption and the jury instructions. Plaintiffs also appeal an order awarding attorney fees to Cox as the prevailing party on certain counts.

We conclude that (1) summary adjudication was proper as to the count for failure to pay promised vacation benefits to current employees but improper as to the count for failure to pay vacation benefits due upon termination of employment; (2) the denial of plaintiffs' motion to exclude witnesses from testifying at trial was proper; (3) the finding that plaintiffs were exempt from federal overtime compensation requirements pursuant to the motor carrier exemption was proper; (4) plaintiffs have shown no instructional error; and (5) the attorney fee award to Cox as the prevailing party must be reversed. We therefore will affirm the judgment in part, reverse the judgment in part and reverse the order awarding attorney fees.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1.  Factual Background

Cox is a trucking company specializing in hauling petroleum products and related products. Plaintiffs are former truck drivers employed by Cox in the State of California.

---

[1] The plaintiffs named in the first amended complaint are Oscar Bell, Angela Bush, Rodolfo Valle and Harlan Green.

Cox's drivers haul ethanol from storage tanks at ethanol storage facilities in California, known as hubs, to storage tanks at truck terminals in California, known as tank farms. At the truck terminals, Cox's trucks are loaded with a combination of ethanol from ethanol storage tanks and gasoline from gasoline storage tanks for delivery to gasoline service stations in California. Techron, a gasoline additive used exclusively by Chevron, is transported by truck from storage facilities in California to truck terminals in California and then loaded onto delivery trucks together with gasoline and ethanol in the same manner. Cox's drivers also haul motor oil, known as lube oil, the gasoline additives isooctane and alkylate, and fuel oil from facilities in California to other facilities in California. Cox's drivers also haul products across state lines. Cox maintains that its drivers are exempt from state and federal overtime compensation requirements and does not pay its drivers overtime.

Cox's vacation benefits policy provided that eligible employees earned one or more weeks of paid vacation annually, depending on their length of employment. The policy provided, however, that drivers would be paid only $500 per week (increased in 2005 to $650 per week) during their vacation and that employees would receive no payment for vacation benefits upon the termination of their employment.

### 2. *Complaint*

Plaintiffs filed a complaint against Cox in July 2005 and filed a first amended complaint in April 2006 alleging counts for (1) failure to pay overtime compensation due under state law; (2) failure to provide meal periods and rest breaks; (3) failure to pay wages for work performed "off the clock"; (4) failure to pay promised vacation benefits in full; (5) failure to pay vacation benefits due upon termination of employment (Lab. Code, § 227.3); (6) failure to pay overtime, vacation and other compensation due upon termination of employment; and (7) unfair business practices (Bus. & Prof. Code, § 17200 et seq.).[2]

Cox removed the action to federal district court. The federal district court determined that it had no subject matter jurisdiction and granted plaintiffs' motion to remand the action to the superior court in October 2005.

### 3. *Class Certification*

The trial court granted class certification on plaintiffs' count for failure to pay vacation benefits due upon termination of employment, but denied class

---

[2] We judicially notice the complaint filed in this action on July 25, 2005, and the first amended complaint filed on April 18, 2006. (Evid. Code, § 452, subd. (d).)

certification on the other counts. The court defined the certified class as all truck drivers employed by Cox at any time after July 25, 2001, who were not paid their accrued vacation wages upon the termination of their employment with Cox.[3] Plaintiffs petitioned this court for a writ of mandate. We held that the denial of class certification on the counts for failure to pay overtime compensation and failure to pay promised vacation benefits was error and directed the court to grant class certification on those counts. (*Bell v. Superior Court* (Nov. 21, 2007, B199605) opn. ordered nonpub. Apr. 25, 2008, pp. 30, 34, 36.) We concluded that plaintiffs' count for failure to pay promised vacation benefits was based on the alleged illegality of Cox's policy of paying drivers a flat rate of vacation benefits. (*Id.* at p. 34.)

### 4. *Summary Adjudication*

Cox filed a motion for summary judgment or summary adjudication in August 2008. The trial court granted summary adjudication of the first count for failure to pay overtime compensation, the fourth count for failure to pay promised vacation benefits and the fifth count for failure to pay vacation benefits due upon termination of employment, and otherwise denied the motion. The court concluded that the counts for failure to pay promised vacation benefits and failure to pay vacation benefits due upon termination were preempted by the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.). The court also found with respect to the count for failure to pay promised vacation benefits that Cox's vacation benefits policy was legal in any event.

### 5. *Motion to Exclude Witnesses from Testifying at Trial*

Plaintiffs filed a motion on April 17, 2009, to exclude from testifying at trial witnesses who were not identified in Cox's interrogatory responses. The trial was scheduled to commence on April 20, 2009. The witnesses were individual representatives of third party shippers whom Cox intended to call to testify at trial regarding the interstate nature of its business. After the trial date was continued, Cox agreed to cooperate in arranging for depositions of the witnesses provided that the depositions took place close to their homes at a time convenient for the witnesses and that the depositions would be limited to the subject of the witnesses' expected trial testimony. Plaintiffs declined the offer.

Plaintiffs filed another motion on June 8, 2009, to exclude from testifying at trial witnesses who were not identified in Cox's interrogatory responses.

---

[3] We judicially notice the class certification order filed in this action on February 14, 2007. (Evid. Code, § 452, subd. (d).)

The trial was scheduled to commence on June 23, 2009. Plaintiffs argued that Cox had willfully failed to disclose the names of the witnesses in response to discovery requests directly calling for such information and that the failure to identify the witnesses had impeded plaintiffs' trial preparation. Citing *Thoren v. Johnston & Washer* (1972) 29 Cal.App.3d 270, 105 Cal.Rptr. 276, plaintiffs argued that the exclusion of the witnesses from testifying at trial was appropriate as an evidence sanction to prevent Cox from profiting from its misconduct.

Cox argued in opposition that it had identified the third party shippers in its interrogatory responses and that plaintiffs never moved to compel further responses to identify individual representatives of the shippers or took any other measures to discover the individual witnesses' names. Cox also argued that it did not know the names of the individual witnesses at the time of its discovery responses and that it neither willfully withheld those names nor willfully violated any order to disclose such information. The trial court apparently denied the motion.

### 6. *Trial, Statement of Decision and Judgment*

A nonjury trial on the unfair business practices count commenced in July 2009. The unfair business practices count was based on alleged violations of the federal Fair Labor Standards Act of 1938 (FLSA) (29 U.S.C. § 207(a)(1)) regarding payment of overtime compensation. The nonjury trial was limited to Cox's affirmative defense that all of its employees were exempt from overtime compensation pursuant to the motor carrier exemption. After several days of testimony, the jury phase of trial began.

A jury trial on the count for failure to provide meal periods and rest breaks commenced in August 2009. Plaintiffs proposed 14 special instructions, and Cox proposed three special instructions. The trial court rejected all of the proposed special instructions and gave its own special instructions on meal periods and rest breaks. The jury returned a verdict in August 2009 finding that Cox did not fail to provide any of the named plaintiffs either a meal period or a rest break.

The trial court issued a statement of decision in September 2010 with respect to the bench trial portion of the case. The court found that Cox's intrastate transport of ethanol, Techron, lube oil for Exxon, isooctane, and fuel oil was part of the continuous movement of those products in interstate commerce. It also found that Cox transported products across state lines and that such interstate transport was more than de minimis. The court found that Cox assigned drivers to interstate deliveries indiscriminately and that all of its drivers could reasonably expect to be assigned to an interstate delivery. The

court also stated that the Department of Transportation had licensed and regulated Cox and that both the Department of Transportation and Department of Labor had determined that Cox's drivers were exempt from the FLSA's overtime compensation requirements. The court concluded that these circumstances and the fact that Cox had consistently solicited interstate work supported the conclusion that Cox was engaged in interstate commerce and therefore was exempt from the FLSA's overtime compensation requirement pursuant to the motor carrier exemption. The court therefore concluded that plaintiffs were entitled to no relief under the unfair competition law.

The trial court entered a judgment on November 8, 2010, stating that the first, fourth and fifth counts were summarily adjudicated in favor of Cox, that plaintiffs had voluntarily dismissed the third count, and that the jury found in favor of Cox on the second count for failure to provide meal periods and rest breaks. The judgment states that plaintiffs are entitled to no relief on the seventh count for unfair business practices and that the sixth count for failure to pay overtime, vacation and other compensation due upon termination of employment was derivative of other counts that were decided in Cox's favor. Plaintiffs timely appealed the judgment (No. B229982).

### 7. Attorney Fees

Cox filed a motion in January 2011 for an award of attorney fees pursuant to Labor Code section 218.5. Cox argued that it was the prevailing party in an action for nonpayment of wages and therefore was entitled to a fee award under the statute in the amount of $512,272.88. Plaintiffs opposed the motion arguing among other things that Cox was not entitled to fees under the statute. The trial court found that Cox as the prevailing party was entitled to a fee award on the counts for failure to pay promised vacation benefits and failure to pay vacation benefits due upon termination of employment, but not on the other counts. The court awarded Cox $120,000 in attorney fees in an order filed on April 8, 2011. Plaintiffs timely appealed the order (No. B233136).

### CONTENTIONS

Plaintiffs contend the trial court erred by (1) finding that the counts for failure to pay promised vacation benefits and failure to pay vacation benefits due upon termination of employment were preempted by ERISA; (2) finding that Cox's vacation benefits policy was legal; (3) denying their motion to exclude witnesses at trial and their oral request to depose the witnesses prior to trial; (4) finding that plaintiffs were exempt from the FLSA's overtime compensation requirement pursuant to the motor carrier exemption; (5)

failing to adequately instruct the jury on the count for failure to provide meal periods and rest breaks; and (6) awarding Cox attorney fees under Labor Code section 218.5.

## DISCUSSION

1.  *Summary Adjudication Was Proper as to the Count for Failure to Pay Promised Vacation Benefits to Current Employees but Improper as to the Count for Failure to Pay Vacation Benefits Due upon Termination of Employment*

    a.  *Standard of Review*

Summary adjudication of a cause of action is appropriate only if there is no triable issue of material fact as to that cause of action and the moving party is entitled to judgment on the cause of action as a matter of law. (Code Civ. Proc., § 437c, subd. (f)(1).) A defendant moving for summary adjudication of a cause of action must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. (*Id.*, subd. (p)(2).) If the defendant makes that initial showing, the burden then shifts to the plaintiff to show that a triable issue of material fact exists. (*Ibid.*)

We review the trial court's ruling de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opposing party. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460 [30 Cal.Rptr.3d 797, 115 P.3d 77].) We must affirm a summary adjudication if it is correct on any ground that the parties have had an adequate opportunity to address on appeal, regardless of the trial court's stated reasons. (*Johnson v. United Cerebral Palsy/Spastic Children's Foundation* (2009) 173 Cal.App.4th 740, 754 [93 Cal.Rptr.3d 198]; *Western Mutual Ins. Co. v. Yamamoto* (1994) 29 Cal.App.4th 1474, 1481 [35 Cal.Rptr.2d 698]; see Gov. Code, § 68081; Code Civ. Proc., § 437c, subd. (m)(2).)

    b.  *The Existence of a Triable Issue of Fact as to ERISA Preemption Precludes Summary Adjudication on This Basis*

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans. [Citations.]" (*Shaw v. Delta Air Lines, Inc.* (1983) 463 U.S. 85, 90 [77 L.Ed.2d 490, 103 S.Ct. 2890].) Employee benefit plans governed by ERISA include plans providing vacation benefits. (29 U.S.C. §§ 1002(1), (3), 1003(a).) ERISA expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. (29 U.S.C. § 1144(a).)

The United States Supreme Court in *Massachusetts v. Morash* (1989) 490 U.S. 107 [104 L.Ed.2d 98, 109 S.Ct. 1668] considered whether ERISA preempted an action under state law to enforce a company's policy of paying its discharged employees for their unused vacation time. (490 U.S. at p. 109.) *Morash* noted that "[t]he precise coverage of ERISA is not clearly set forth in the Act" (490 U.S. at p. 113) and stated that the act "does not specify whether every policy to provide vacation benefits falls within its ambit" (490 U.S. at p. 114). *Morash* concluded that a policy of maintaining a separate fund to pay employees vacation benefits constitutes an employee benefit plan governed by ERISA, but a policy of paying vacation benefits from an employer's general assets does not constitute an employee benefit plan governed by ERISA. (490 U.S. at pp. 114–119.) *Morash* held that because the employer paid vacation benefits from its general assets the plan at issue was not an employee benefit plan under ERISA, so there was no preemption. (490 U.S. at pp. 120–121.) ERISA preempts an action under state law for failure to pay vacation benefits only if the employer maintains an employee benefit plan governed by ERISA. (See 490 U.S. at p. 119.)

Accordingly, ERISA preempts an action under state law for failure to pay vacation benefits only if the employer maintains a separate account for payment of vacation benefits and does not pay its employees vacation benefits from its general assets. (*Millan v. Restaurant Enterprises Group, Inc.* (1993) 14 Cal.App.4th 477, 489 [18 Cal.Rptr.2d 198]; see *California Hospital Assn. v. Henning* (9th Cir. 1985) 770 F.2d 856, 859–861.) Whether the employer maintains a separate account for payment of vacation benefits or pays vacation benefits from its general assets is a question of fact. (See *Marshall v. Bankers Life & Casualty Co.* (1992) 2 Cal.4th 1045, 1052 [10 Cal.Rptr.2d 72, 832 P.2d 573] [stating that the existence of an employee benefit plan governed by ERISA is a question of fact].)

Cox filed with the Internal Revenue Service IRS Form 5500's, entitled "Annual Return/Report of Employee Benefit Plan", for the periods from May 1, 2002, to April 30, 2003, and May 1, 2003, to April 30, 2004, clearly stating that its vacation benefits plan was funded from "[g]eneral assets of the sponsor." The sponsor was identified as Cox. The forms were signed by the plan administrator under penalty of perjury. Cox filed certified copies of the Form 5500's in federal district court in 2005 in connection with its remand motion.

Cox argued in its motion for summary adjudication that its vacation benefits plan was an employee benefit plan governed by ERISA and that the counts for failure to pay promised vacation benefits to current employees and failure to pay vacation benefits due upon termination of employment therefore were both preempted. Cox filed a declaration by its president, Daniel

Mairs, stating that he was trustee of a trust from which all employee benefits under the vacation benefits plan were paid. Attached to the declaration were copies of the trust agreement and benefits checks paid from the trust. He declared that Cox had irrevocably contributed funds to the trust. Mairs declared that he learned in 2005 that "the outside accountants for the Plan and Trust" had incorrectly stated on the Form 5500's for the plan years 2001 through 2004 that benefits were paid from Cox's general assets. He declared that corrected Form 5500's were later filed with the IRS. He declared that the outside accountants had also incorrectly stated on IRS Form 990's for the same years the amount held by the trust in checking accounts at the end of each fiscal year and that corrected Form 990's had been filed with the IRS as well.

Plaintiffs argued in opposition to the motion for summary adjudication that, in these circumstances, the Form 5500's initially filed with the IRS created a triable issue of fact as to whether the vacation benefits plan was funded from Cox's general assets, as stated in those forms, or from a separate trust, as stated in the Mairs declaration and in the corrected forms.[4] We agree. The fact that the corrected forms were created and filed with the IRS only after the filing of plaintiffs' complaint would support an inference that the corrected forms were false and were created for purposes of defending against the complaint. In our view, the trial court could not simply accept as true Cox's explanation that the forms initially filed with the IRS were incorrect. Instead, in these circumstances, those competing filings created a triable issue of fact precluding summary adjudication of both the fourth and fifth counts on this basis.

    c.   *Plaintiffs Have Shown No Error in the Finding That Cox's Vacation Benefits Policy Was Legal with Respect to Current Employees*

The trial court granted summary adjudication of the fifth count for failure to pay vacation benefits due upon termination of employment based solely on ERISA preemption. In light of our conclusion that a triable issue of fact exists with respect to the ERISA preemption issue, the summary adjudication of the fifth count was error. The court also granted summary adjudication of the fourth count for failure to pay promised vacation benefits based on both ERISA preemption and the additional basis that Cox's vacation benefits policy was legal. Plaintiffs challenge the granting of summary adjudication of the fourth count on this additional basis. We conclude that plaintiffs have shown no error in the trial court's conclusion that Cox's vacation benefits policy was legal as applied to current employees. We therefore conclude that

---

[4] Plaintiffs filed certified copies of the Form 5500's initially filed with the IRS in support of its opposition to the motion for summary adjudication.

although the trial court erred in basing summary adjudication of the fourth count on ERISA preemption, its ruling based on the legality of Cox's policy was proper.

Plaintiffs contend Cox's policy of paying its drivers $500 (and later $650) per week of unused vacation time violated the statutory requirement that, upon the termination of employment, an employee's unused, vested vacation time "shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served . . . . " (Lab. Code, § 227.3). The relevant facts are undisputed. This presents a question of statutory construction, which we review de novo. (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 529 [120 Cal.Rptr.3d 531, 246 P.3d 612].)

■ "Our fundamental task in construing a statute is to ascertain the legislative intent so as to effectuate the purpose of the law. (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715 [3 Cal.Rptr.3d 623, 74 P.3d 726].) Because the statutory language ordinarily is the most reliable indicator of legislative intent, we begin by examining the words of the statute. (*Ibid.*) We give the words of the statute their ordinary and usual meaning and construe them in the context of the statute as a whole and the entire scheme of law of which it is a part. (*State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1043 [12 Cal.Rptr.3d 343, 88 P.3d 71].) If the language is clear and a literal construction would not result in absurd consequences that the Legislature did not intend, we presume that the Legislature meant what it said and the plain meaning governs. (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563].) If the language is ambiguous, we may consider a variety of extrinsic aids, including the purpose of the statute, legislative history, and public policy. (*Ibid.*)" (*Frontier Oil Corp. v. RLI Ins. Co.* (2007) 153 Cal.App.4th 1436, 1448–1449 [63 Cal.Rptr.3d 816].)

Labor Code section 227.3 states in full: "Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination. The Labor Commissioner or a designated representative, in the resolution of any dispute with regard to vested vacation time, shall apply the principles of equity and fairness."

The California Supreme Court in *Suastez v. Plastic Dress-Up Co.* (1982) 31 Cal.3d 774 [183 Cal.Rptr. 846, 647 P.2d 122] (*Suastez*) held that if an employer's policy or contract of employment provides for paid vacation time, the right to paid vacation time vests as the labor is rendered. (*Id.* at p. 784.) Vacation pay constitutes deferred wages for services rendered, rather than an inducement for future services. (*Id.* at pp. 782, 784.)

The employer's vacation benefits policy in *Suastez, supra,* 31 Cal.3d 774, provided that employees were entitled to a number of weeks of paid vacation annually, but that they did not become eligible for paid vacation time until the anniversary date of their employment. (*Id.* at p. 776.) *Suastez* held that the employer's refusal to pay an employee whose employment was terminated before his anniversary date a pro rata share of his earned vacation pay violated Labor Code section 227.3. (*Suastez, supra,* 31 Cal.3d at pp. 781–784.) *Suastez* rejected the employer's argument that the language "all vested vacation [time] shall be paid to [the employee] as wages at his final rate *in accordance with such contract of employment or employer policy respecting eligibility or time served . . .*" (italics added) in Labor Code section 227.3 supported a contrary result. *Suastez* explained that this language means that the employer's policy determines the amount of vacation time earned, typically based on the employee's length of employment and position held, and does not mean that the employer's policy determines the time of vesting. (*Suastez, supra,* at pp. 782–783.)

Thus, Labor Code section 227.3 prohibits the forfeiture of vested vacation benefits upon the termination of employment. (*Suastez, supra,* 31 Cal.3d at p. 784.) The Courts of Appeal have held, however, that the statute does not prohibit a "no additional accrual" policy that prevents employees from earning additional paid vacation time in excess of a specified limit (*Boothby v. Atlas Mechanical, Inc.* (1992) 6 Cal.App.4th 1595, 1601–1602 [8 Cal.Rptr.2d 600]), and that an employer need not provide paid vacation time to its employees (*Owen v. Macy's, Inc.* (2009) 175 Cal.App.4th 462, 470–471 [96 Cal.Rptr.3d 70]).

Labor Code section 227.3, by its express terms, applies only to the situation where an employee is terminated without having taken off his or her vested vacation time. Neither Labor Code section 227.3 nor any other authority cited by plaintiffs supports the proposition that, apart from the situation where an employee is terminated with unused vacation time, a vacation benefits policy must provide for payment of vacation time at an employee's *regular* rate of pay. Thus, plaintiffs have shown no error in the summary adjudication of the fourth count for failure to pay promised vacation benefits on this basis.

### 2. The Denial of Plaintiffs' Motion to Exclude Witnesses at Trial Was Proper

Plaintiffs moved to exclude witness testimony at trial as an evidence sanction for misuse of the discovery process. We review the ruling on such a motion for abuse of discretion. (*Thoren v. Johnston & Washer, supra,* 29 Cal.App.3d at p. 273.) We review any factual findings in connection with the ruling under the substantial evidence standard. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711 [76 Cal.Rptr.3d 250, 182 P.3d 579].)

The record on appeal contains no ruling on the motion to exclude witnesses and no explanation of the trial court's reasons for apparently denying the motion. We presume that the court found that plaintiffs failed to satisfy their burden to show that Cox had provided willfully false responses to the interrogatories.

The record shows that Cox responded "the shippers," in addition to naming individual Cox employees, in its answer to an interrogatory requesting the identity of "all witnesses that have knowledge of the facts that 'Shippers transport the ethanol into California by rail carriers.' " In response to another interrogatory requesting the identity of "all 'shippers' as described in your contention that Cox 'merely delivers the product to its intended ultimate destination, in accordance with the shipper's intent, and is simply completing a step in the interstate delivery process,' " Cox identified numerous entities. There is no indication in the record that plaintiffs requested further responses. Although Cox did not identify the shippers in its responses to other interrogatories relating to purported interstate shipments, we conclude that substantial evidence supports an implied finding that Cox did not willfully provide false responses. Moreover, absent an order compelling Cox to identify the individual witnesses and a violation of such an order or other egregious misconduct, plaintiffs have shown no basis for an evidence sanction. (*New Albertsons, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1422–1426 [86 Cal.Rptr.3d 457].) For these reasons, we hold that the denial of plaintiffs' motion to exclude witnesses at trial was proper.

Plaintiffs also argue on appeal that the trial court denied their request to depose the "undisclosed witnesses." But their written motion to exclude witness testimony at trial did not include such a request, and plaintiffs cite nothing in the record showing that they ever made such a request. Plaintiffs have failed to substantiate their claim of error.

### 3. Plaintiffs Are Exempt from the FLSA's Overtime Compensation Requirement Pursuant to the Motor Carrier Exemption

#### a. Legal Framework

■ The FLSA requires employers to pay employees covered by the act one and one-half times their normal hourly wage for each hour worked in excess of 40 hours per week. (29 U.S.C. § 207(a)(1).) This requirement, however, is inapplicable to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of title 49." (*Id.*, § 213(b)(1).) This is known as the motor carrier exemption. Employees subject to the Secretary of Transportation's jurisdiction under title 49 United States Code section 31502(b) are exempt from the FLSA's overtime compensation requirement pursuant to the motor carrier exemption regardless of whether the Secretary of Transportation actually exercises jurisdiction. (*Levinson v. Spector Motor Co.* (1947) 330 U.S. 649, 661–662, 678 [91 L.E.2d 1158, 67 S.Ct. 932]; *Klitzke v. Steiner Corp.* (9th Cir. 1997) 110 F.3d 1465, 1468.)

The motor carrier exemption applies to individual employees only if (1) their employer is a carrier subject to the jurisdiction of the Secretary of Transportation under title 49 United States Code section 31502(b) and (2) the individual employees are engaged in activities directly affecting the safety of operation of motor vehicles in interstate or foreign commerce. (*Songer v. Dillon Resources, Inc.* (5th Cir. 2010) 618 F.3d 467, 472; *Walters v. American Coach Lines of Miami, Inc.* (11th Cir. 2009) 575 F.3d 1221, 1227; *Dauphin v. Chestnut Ridge Transportation, Inc.* (S.D.N.Y. 2008) 544 F.Supp.2d 266, 273–275; see 29 C.F.R. 782.2(a) (2012).) Exemptions to the FSLA are "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." (*Arnold v. Ben Kanowsky, Inc.* (1960) 361 U.S. 388, 392 [4 L.Ed.2d 393, 80 S.Ct. 453].)

■ Intrastate deliveries of goods are considered to be part of interstate commerce if the deliveries are merely a continuation of an interstate journey. (*Walling v. Jacksonville Paper Co.* (1943) 317 U.S. 564, 568 [87 L.Ed. 460, 63 S.Ct. 332]; *Bilyou v. Dutchess Beer Distributors, Inc.* (2d Cir. 2002) 300 F.3d 217, 223.) Goods arriving from out of state that are unloaded and held in a warehouse before being loaded onto trucks and delivered to customers do not terminate their interstate journey if "there is a practical continuity of movement of the goods until they reach the customers for whom they are intended." (*Walling, supra*, at p. 568.) Courts determining whether intrastate deliveries are part of interstate commerce consider the

shipper's intended final destination of the goods upon the commencement of the interstate journey. (*Bilyou, supra,* at pp. 223–225; *Klitzke v. Steiner Corp., supra,* 110 F.3d at pp. 1469–1470.)

Even drivers who do not transport goods in interstate commerce are subject to the jurisdiction of the Secretary of Transportation if, as part of their regular duties, they reasonably could be expected to be called on to make interstate runs. (*Morris v. McComb* (1947) 332 U.S. 422, 433–434 [92 L.Ed. 44, 68 S.Ct. 131] (*Morris*); *Walters v. American Coach Lines of Miami, Inc.* (S.D.Fla. 2008) 569 F.Supp.2d 1270, 1292 (*Walters*), affd. (11th Cir. 2009) 575 F.3d 1221; *Garcia v. Pace Suburban Bus Service, a Division of Regional Transportation* (N.D.Ill. 1996) 955 F.Supp. 75, 77 (*Garcia*).) The United States Supreme Court in *Morris* held that, although interstate hauls constituted only 3.65 percent of the carrier's trips and many of its drivers performed no interstate hauls, the motor carrier exemption applied to all of the carrier's drivers. (*Morris, supra,* 332 U.S. at pp. 433–434.) *Morris* stated that the interstate hauls were "shared indiscriminately by the drivers" and mingled with intrastate work, and "were thus a natural, integral and apparently inseparable part of the common carrier service of the petitioner and of his drivers." (*Morris,* at p. 433.) Recognizing the desire to regulate employees whose work may affect the safety of operation of vehicles in interstate commerce, *Morris* held that the Interstate Commerce Commission had the power to establish qualifications and maximum hours of service for all of the carrier's drivers and mechanics and that the motor carrier exemption therefore applied to all such employees.[5] (*Id.* at p. 434.)

Subsequent opinions have explained that the jurisdiction of the Secretary of Labor extends to drivers who reasonably could be expected to drive an interstate route, meaning that it is more than a remote possibility. (*Walters, supra,* 569 F.Supp.2d at p. 1292; *Garcia, supra,* 955 F.Supp. at p. 77.)

  b.  *Plaintiffs Have Shown No Error in the Finding That they Reasonably Could Be Expected to Be Assigned to Interstate Routes*

Plaintiffs challenge the trial court's finding that their intrastate deliveries are part of the continuous movement of goods in interstate commerce. They also challenge the court's finding that Cox's drivers are indiscriminately assigned to interstate routes and that all of the drivers reasonably could be expected to be called on to drive an interstate route. Because we conclude that plaintiffs have shown no error in the latter finding, and that finding

---

[5] The former Interstate Commerce Commission was the predecessor of the Secretary of Transportation with respect to the regulation of motor carriers. (See *Dauphin v. Chestnut Ridge Transportation, Inc., supra,* 544 F.Supp.2d at p. 274.)

supports the conclusion that plaintiffs are exempt from overtime, we need not further discuss the finding that plaintiffs' intrastate deliveries are part of the continuous movement of goods in interstate commerce.

The trial court stated in its statement of decision that drivers are considered to be "indiscriminately assigned" to interstate routes if they reasonably could be expected to be called on to drive an interstate route. The court found that Cox's drivers hauled 3,543 loads on interstate routes to or from California during the class period from 2001 through 2008, and that Cox employed 165 drivers as of September 2010. It stated that plaintiffs' contention that Cox assigned interstate hauls on a volunteer basis was not accurate and that the evidence showed that Cox sometimes asked for volunteers and sometimes assigned drivers who did not volunteer to drive interstate routes. It found that all of Cox's drivers and all of its trucks were qualified for interstate hauls and that some drivers had been randomly assigned to interstate routes. The court noted that, in requesting volunteers, Cox made it clear that no driver was immune from being assigned to drive an interstate route. The court found that all of Cox's drivers reasonably could be expected to be called on to drive an interstate route.

Plaintiffs argue in their appellants' opening brief that they had no reasonable expectation that they would be called on to drive outside of California. They cite evidence that Cox advertised for drivers for "local" hauls, that they were not told at the time of their initial hiring that they might have to drive outside of California and that many of them have never been asked to drive outside of California.[6] They also cite evidence that, in July 2005, Cox notified all drivers at three of its locations that they would be required to drive an interstate route, but then rescinded the policy after only a few days. Plaintiffs cite no legal authority in support of their argument that their subjective expectations are determinative (see *Walters v. American Coach Lines of Miami, Inc.* (S.D.Fla., June 17, 2009, No. 07-22000-CIV) 2009 WL 1708811 [rejecting the same argument]) and have not shown that any of these circumstances compels the conclusion that they reasonably could not be expected to be assigned to interstate routes.

---

[6] Plaintiffs cite additional evidence in their reply brief and argue for the first time that they had no reasonable expectation that they would be called on to drive outside of California because most of Cox's interstate hauls were limited to two terminals in California. Plaintiffs also argue for the first time in their reply brief that interstate hauls by "designated drivers" assigned to particular customers are irrelevant because Cox had no control over such drivers. We generally disregard arguments raised for the first time in a reply brief. (*Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 362, fn. 18 [112 Cal.Rptr.3d 455].) Plaintiffs have shown no reason for us to deviate from that rule here, so we will not consider these and other arguments asserted for the first time in plaintiffs' reply brief.

Moreover, plaintiffs fail to cite or discuss the evidence supporting the trial court's finding that all of Cox's drivers reasonably could be expected to be assigned to an interstate route. We must presume that the evidence supports the court's factual findings unless the appellant affirmatively demonstrates to the contrary. (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 879 [160 Cal.Rptr. 516, 603 P.2d 881].) An appellant challenging a factual finding cannot selectively cite only evidence favorable to the appellant. Instead, the appellant must summarize the evidence supporting the judgment and explain why such evidence is insufficient. (*Ibid.*; *City of Hollister v. Monterey Ins. Co.* (2008) 165 Cal.App.4th 455, 484 [81 Cal.Rptr.3d 72].) Plaintiffs fail to do so and therefore have shown no error in the finding.

Plaintiffs also argue that Cox's interstate hauls are de minimis. They briefly discuss some of the evidence, but they cite no legal authority and offer no reasoned argument on this point.[7] We conclude that they have shown no error on this basis. (*Valov v. Department of Motor Vehicles* (2005) 132 Cal.App.4th 1113, 1132 [34 Cal.Rptr.3d 174]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273].)

### 4. *Plaintiffs Have Shown No Instructional Error*

■ A party is entitled to an instruction on each viable legal theory supported by the pleadings and substantial evidence if the party requests a proper instruction. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572 [34 Cal.Rptr.2d 607, 882 P.2d 298] (*Soule*); *Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 684 [71 Cal.Rptr.3d 775] (*Bullock*).) "A court may refuse a proposed instruction that incorrectly states the law or is argumentative, misleading, or incomprehensible to the average juror, and ordinarily has no duty to modify a proposed instruction. [Citations.] A court may refuse a proposed instruction if other instructions given adequately cover the legal point. [Citation.]" (*Bullock, supra*, at pp. 684–685.) Because an appealed judgment is presumed correct and an appellant has the burden to show error, we cannot conclude that the refusal to give an instruction was error absent an adequate showing that the proposed instruction was proper. (*Ibid.*)

The refusal of a proper instruction is prejudicial only if " 'it seems probable' that the error 'prejudicially affected the verdict.' [Citations.]" (*Soule, supra*, 8 Cal.4th at p. 580.) "[W]hen deciding whether an error of instructional omission was prejudicial, the court must also evaluate (1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's

---

[7] The additional argument on this point in plaintiffs' reply brief comes too late. (*Singh v. Southland Stone, U.S.A., Inc., supra*, 186 Cal.App.4th at p. 362, fn. 18.)

arguments, and (4) any indications by the jury itself that it was misled. [Fn. omitted.]" (*Id.* at pp. 580–581.)

Plaintiffs proposed 14 special instructions on their count for failure to provide meal periods and rest breaks. The trial court rejected all of those proposed instructions and prepared its own special instructions. Plaintiffs' counsel agreed that the court's instructions adequately covered the matters addressed in plaintiffs' proposed special instruction No. 1. Plaintiffs' counsel also voluntarily withdrew their proposed special instructions Nos. 2, 3 and 4. Counsel for both sides expressly stipulated to all of the instructions to be given by the court apart from their objections stated on the record.

Plaintiffs contend the instructions given failed to inform the jury that (1) Cox's drivers were entitled to two meal periods and three rest breaks per shift; (2) employees must be relieved of all job duties during meal periods and rest breaks; (3) pursuant to federal regulations, Cox's drivers are on duty at all times unless affirmatively relieved of responsibility for their trucks; and (4) on-duty meal periods and rest breaks are permitted only if the nature of the work prevents an employee from being relieved of all duty and the employee and employer agreed in writing to an on-the-job paid meal period.

■ A party need not object at trial to an erroneous instruction in order to challenge the instruction on appeal. (*Lund v. San Joaquin Valley Railroad* (2003) 31 Cal.4th 1, 7 [1 Cal.Rptr.3d 412, 71 P.3d 770]; Code Civ. Proc., § 647.) But a party challenging an instruction on the grounds that the instruction, although legally correct, is too general, lacks clarity or is incomplete must request the additional or qualifying instruction in order to preserve those grounds for appeal. (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1131 [72 Cal.Rptr.3d 382, 176 P.3d 654] (*Metcalf*).)

Plaintiffs set forth their proposed special instructions Nos. 1 through 13 in full in their appellant's opening brief, but they do not argue that the refusal of any particular instruction was error or that any particular proposed instruction was a specific proper instruction. Instead, plaintiffs argue that the instructions given failed to inform the jury of rules of law included in their proposed instructions. Plaintiffs' proposed instructions not only included many of the matters stated in the instructions given and some, but not all, of the additional legal points that plaintiffs contend were wrongfully omitted, but also included other questionable legal statements. Because plaintiffs have not shown that any particular proposed instruction was proper, we conclude that they have shown no error in the denial of any of their proposed instructions. (*Bullock, supra*, 159 Cal.App.4th at p. 685.)

Moreover, our independent review of the record discloses additional reasons to reject three of plaintiffs' claims of instructional error. Plaintiffs

contend the instructions given failed to inform the jury that Cox's drivers were entitled to two meal periods and three rest breaks per shift. The trial court, however, did instruct the jury that plaintiffs were entitled to meal periods and rest breaks based on the number of hours worked per day and specified the number of hours worked for which plaintiffs would be entitled to a second meal period and additional rest breaks. This was sufficient. Plaintiffs did not request a specific instruction that they were entitled to two meal periods and three rest breaks per shift and therefore cannot argue on appeal that the instructions given were deficient in this regard. (*Metcalf, supra*, 42 Cal.4th at p. 1131.)

Plaintiffs contend the instructions given failed to inform the jury that employees must be relieved of all job duties during meal periods and rest breaks, but the trial court adequately conveyed this point with respect to meal periods by instructing the jury that Cox failed to provide a meal period if it "did not relieve plaintiff of all duty during the thirty (30) minute meal period . . . ." With respect to rest breaks, plaintiffs never requested an instruction stating that employees must be relieved of all job duties during rest breaks and therefore cannot argue on appeal that the instructions were deficient in this regard. (*Metcalf, supra*, 42 Cal.4th at p. 1131.)

Plaintiffs also contend the instructions given failed to inform the jury that Cox's drivers are on duty at all times unless affirmatively relieved of responsibility for their trucks. Plaintiffs' proposed special instruction No. 13 quoted verbatim from a former federal regulation defining "on duty time" for purposes of federal regulations limiting drivers' hours of service.[8] (Former 49 C.F.R. § 395.2, 57 Fed.Reg. 33648 (July 30, 1992), as amended at 59 Fed.Reg. 7515 (Feb. 15, 1994).) Plaintiffs apparently contend a driver who is on duty for purposes of federal regulations limiting hours of service is not relieved of all duty for purposes of the requirement under the applicable California Industrial Welfare Commission wage order that an employer must provide an employee a meal period during which the employee is relieved of all duty (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1035 [139 Cal.Rptr.3d 315, 273 P.3d 513]). Yet plaintiffs cite no authority for this proposition and offer no reasoned argument that their proposed instruction accurately stated the applicable law. We therefore conclude that plaintiffs have shown no error in the refusal of their proposed special instruction No. 13. (*Bullock, supra*, 159 Cal.App.4th at p. 685.)

---

[8] Proposed special instruction No. 13 included 10 enumerated subparagraphs, several of which were not relevant to the evidence presented at trial and several of which referred to other regulations by section or part number in a manner that would be confusing to a jury.

### 5.  *The Attorney Fee Award Must Be Reversed*

■    Labor Code section 218.5 requires an attorney fee award to the prevailing party "[i]n any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions," except an action for which attorney fees are recoverable under Labor Code section 1194 and certain other actions. Our reversal of the judgment compels the conclusion that there is no prevailing party at this time and therefore no basis for an attorney fee award under section 218.5. The order awarding attorney fees to Cox as the prevailing party on certain counts therefore must be reversed. (*Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1053 [55 Cal.Rptr.3d 158].) The issue may be revisited on remand, however, at the conclusion of this litigation.

## *DISPOSITION*

The judgment in favor of Cox is affirmed on all counts, with the sole exception of the fourth count for failure to pay vacation benefits due upon termination of employment. The judgment on the fourth count is reversed with directions to the trial court to (1) vacate the order granting summary adjudication of the fourth count and enter a new order denying summary adjudication of the fourth count and (2) conduct further proceedings consistent with the views expressed in this opinion. The order awarding attorney fees to Cox is reversed. Each party is to bear its own costs on appeal.

Kitching, J., and Aldrich, J., concurred.

A petition for a rehearing was denied October 1, 2012.