Filed 1/12/15

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| COASTAL SURGICAL INSTITUTE, | 2d Civil No. B254787 |
| Plaintiff and Appellant, | (Super. Ct. No. CV120062) |
| v. | (San Luis Obispo County) |
| CHARLES BLEVINS, | |
| Defendant and Respondent. | |

Insurance Code section 11583 provides that the applicable statute of limitations is tolled when advance or partial payment is made to an injured and unrepresented person without notifying him of the applicable limitations period. In this first impression case we hold that the tolling provisions of section 11583 apply to the one-year limitations period for medical malpractice actions.

Coastal Surgical Institute appeals from the judgment entered after a jury returned a verdict in favor of respondent. It contends that the trial court erroneously determined that section 11583 tolled the one-year statute of limitations for medical malpractice actions. Appellant also contends that the trial court erroneously denied its motion to conduct a bifurcated jury trial on its statute of limitations affirmative defense, and refused to instruct the jury on apportioning fault between appellant and Ruhof Corporation, an alleged nonparty tortfeasor. We affirm.

*Factual and Procedural Background*

On September 1, 2010, a doctor performed surgery on respondent's knee at appellant's surgical facility. After the surgery, respondent's knee became infected. The infection was caused by pseudomonas aeruginosa bacteria. This bacteria was subsequently found on a sponge manufactured by Ruhof Corporation (Ruhof) that had been used to clean surgical equipment prior to respondent's surgery. The bacteria that infected respondent's knee had apparently "survived the sterilization process" performed by appellant's employees.

On October 12, 2010, appellant paid respondent $4,118.23 for the medical expenses he had incurred in treating the knee infection. Respondent did not sign an agreement releasing appellant from liability. Appellant concedes that, at the time of payment, respondent was not represented by counsel and it did not give him written notice of the applicable statute of limitations for a medical malpractice action.

On January 24, 2012, more than 15 months after respondent's receipt of appellant's payment, respondent filed the instant action against appellant. A second amended complaint added Ruhof as a defendant. Ruhof settled for $100,000.

The trial court, relying on section 11583, ruled that the one-year limitations period of Code of Civil Procedure section 340.5 was tolled by appellant's payment of respondent's medical expenses. It denied appellant's motion to conduct a bifurcated jury trial on the statute of limitations issue.

In a special verdict, the jury found that appellant was negligent and that its negligence was a substantial factor in causing harm to respondent. It awarded damages of $543,034. The trial court reduced the damages to $285,114.

*Section 11583 Applies to Medical Malpractice Actions*

Section 11583 provides in relevant part: "No advance payment or partial payment of damages made by any person, or made by his insurer . . . , as an accommodation to an injured person . . . shall be construed as an admission of liability by the person claimed

against, or of that person's or the insurer's recognition of such liability . . . . Any person, including any insurer, who makes such an advance or partial payment, shall at the time of beginning payment, notify the recipient thereof in writing of the statute of limitations applicable to the cause of action which such recipient may bring against such person as a result of such injury . . . . Failure to provide such written notice shall operate to toll any such applicable statute of limitations or time limitations from the time of such advance or partial payment until such written notice is actually given. That notification shall not be required if the recipient is represented by an attorney."

Section 11583 "is primarily designed to encourage early payment of damages without fear of admitting liability. [Citation.] The legislative purpose of the written notice requirement is to prevent an injury victim from being lulled into a false sense of complacency about the need to sue because an advance or partial payment by the defendant or his insurer shows their apparent cooperativeness. [Citation.]" (*Doe v. Doe 1* (2012) 208 Cal.App.4th 1185, 1191.)

Appellant contends that section 11583 does not apply to medical malpractice actions: "Code of Civil Procedure sections 340.5 [hereafter section 340.5] and 364 [hereafter section 364] provide statute of limitations and tolling provisions for medical malpractice cases. They are specific and unique to medical malpractice cases and no others. They are the controlling statutes in this matter and define how a medical malpractice action is tolled." "There is no question that the [L]egislature intended that . . . sections 340.5 and 364 are the only statutes which permit tolling of a statute of limitations in a medical malpractice case."

Sections 340.5 and 364 are part of the Medical Injury Compensation Reform Act (MICRA), enacted in 1975. (*Belton v. Bowers Ambulance Service* (1999) 20 Cal.4th 928, 930.) Section 340.5 provides that the time for commencement of a medical malpractice action "shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered the injury,

3

whichever occurs first. In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person." Section 364 provides that a medical malpractice action may not be commenced "unless the defendant has been given 90 days' prior notice of the intention to commence the action." (*Id*., (subd. (a).) "If the notice is served within 90 days of the expiration of the applicable statute of limitations, the time for commencement of the action shall be extended 90 days from the service of the notice." (*Id*., subd. (d).)

Pursuant to *Belton v. Bowers Ambulance Service*, *supra*, 20 Cal.4th 928, the tolling provisions of section 11583 apply to the one-year limitations period of section 340.5. In *Belton* our Supreme Court held that a similar provision for prisoners tolled the same statute of limitations. (*Id*., at pp. 930, 935.) The court reasoned: "No tolling provision outside of MICRA can extend the three-year maximum time period that section 340.5 establishes. [Citations.] . . . Here, however, [the plaintiff] filed his complaint after the one-year statutory period expired but well within the statute's three-year maximum. (§ 340.5.) Thus, he is not attempting to extend that maximum. Rather, he seeks statutory tolling of the *one-year* period." (*Id*., at p. 931.) The " 'listing of specified tolling rules in section 340.5 implicitly excludes others, but these limits apply only to tolling rules which extend the total limitations period beyond three years: "In no event *shall the time for commencement of legal action exceed three years unless tolled* for any of the following . . . ." . . . The plain language of section 340.5 does *not* purport to limit tolling which extends the total limitations period less than or up to three years.' " (*Id*., at pp. 931-932.)

Like section 340.5, section 364 also does not purport to limit tolling that extends the one-year limitations period. Accordingly, the tolling provisions of section 11583 can extend the one-year period of section 340.5 up to a maximum of three years from the date

4

of injury. Respondent "filed his complaint after the one-year statutory period expired but well within the statute's three-year maximum." (*Belton v. Bowers Ambulance Service*, *supra*, 20 Cal.4th at p. 931.)

Appellant asserts that, if section 11583 applies to medical malpractice actions, it was required "to advise [respondent] when the statute [of limitations would] expire[]." Such a requirement, appellant argues, "would open up 'a can of worms.' " But section 11583 requires no more than that the payor notify the payee in writing of the applicable statute of limitations, not the actual expiration date. Thus, it would have been sufficient if appellant had informed respondent in writing of the three-year and one-year periods as provided in section 340.5. At oral argument, appellant asserted that the application of section 11583 to medical malpractice actions would forever expose doctors to potential suit. Not so. As indicated by our Supreme Court in *Belton v. Bowers Ambulance Service*, *supra*, 20 Cal.4th at pp. 931-932, the maximum three-year limitations period is not altered by our holding.

*Appellant Was Not Entitled to a Jury Trial on*
*Its Statute of Limitations Affirmative Defense*

The trial court denied appellant's motion to conduct a bifurcated jury trial on its statute of limitations affirmative defense. Appellant contends that, pursuant to Code of Civil Procedure section 597.5, this matter should have been decided by the jury because it involved disputed facts. This section provides that, if the answer in a medical malpractice action "pleads that the action is barred by the statute of limitations, and if any party so moves or the court upon its own motion requires, the issues raised thereby must be tried separately and before any other issues in the case are tried."

Appellant contends that it raised a disputed factual issue that was required to be tried: whether its payment of respondent's medical expenses was a partial/advance payment or a final payment. It argues that both parties considered appellant's payment to be "a final payment" instead of an advance or partial payment: "Nobody on behalf of

5

[appellant] considered the payment of the medical bills to be an advance payment against future litigation because they were never aware of any additional claims or that [respondent] intended on pursuing additional claims." Respondent "did not consider this to be an advanced or partial payment but a complete reimbursement for his then out-of-pocket costs and that this would be the end of it."

Section 11583 does not contain a scienter requirement. Thus, whether appellant intended the reimbursement of respondent's medical expenses to be something other than an advance or partial payment is not determinative. As a matter of law, "a defendant's voluntary assumption of the cost of providing treatment is the advance payment of damages under Insurance Code section 11583." (*Doe v. Doe 1*, *supra*, 208 Cal.App.4th at p. 1191.) "If the plaintiff in an auto collision case had a wound that left a scar, and the defendant told the plaintiff to consult with a plastic surgeon about removing the scar, surely the defendant's payment of the surgeon's bill would be advance partial payment of the plaintiff's damages." (*Id*., at p. 1194.) The same is true here where appellant paid respondent's medical expenses incurred through the date of payment, and respondent did not sign an agreement releasing appellant from liability.

Appellant's construction of section 11583 is at variance with the time-honored rule that remedial legislation ". . . must be liberally construed 'to effectuate its object and purpose, and to suppress the mischief at which it is directed.' [Citation.)]" (*Daly v. Exxon Corp.* (1997) 55 Cal.App.4th 39, 44.) Our construction of section 11583 serves the legislative purpose "to prevent an injury victim from being lulled into a false sense of complacency about the need to sue because an advance or partial payment by the defendant or his insurer shows their apparent cooperativeness." (*Doe v. Doe 1, supra,* 208 Cal.App.4th, at p. 1191.) Section 11583 does not require evidence that the defendant or his insurer intended to "lull a plaintiff into not filing a timely complaint. The legislative history says nothing about the need to show such intent, . . . and neither does

the statute."  (***Id***., at p. 1195.)  We agree with the rationale of *Doe.*  We decline to insert an intention element into the statute.

The relevant facts concerning the application of section 11583 were undisputed in the trial court.  When respondent was not represented by counsel, appellant paid his medical expenses and failed to notify him in writing of the statute of limitations.  Respondent did not sign a release of liability.  Thus, "[t]he question was solely one of law addressed to the trial judge and to be decided by him.  In cases of this kind where there is no conflict in the evidence upon which the determination of a question of law rests the decision is for the court and it should not be submitted to the jury.  [Citation.]"  (*Adrian v. Guyette* (1936) 14 Cal.App.2d 493, 504 -505.)  Based on the undisputed facts, the trial court correctly decided that, pursuant to section 11583, the one-year statute was tolled and therefore did not bar respondent's action.

*The Trial Court Did Not Erroneously*

*Refuse to Instruct on Apportionment of Fault*

Appellant requested that the trial court instruct the jury that, if it found that Ruhoff "was at fault" and its "fault . . . was a substantial factor in causing [respondent's] harm," it should "assign percentages of responsibility" to both appellant and Ruhoff.   "[U]nless there is substantial evidence that an individual is at fault [and its fault was a substantial factor in causing harm], there can be no apportionment of damages to that individual." (*Wilson v. Ritto* (2003) 105 Cal.App.4th 361, 367.)  The burden is on the defendant to prove that a nonparty tortfeasor was at fault.  (***Id***., at p. 369.)

"Substantial evidence necessary to support a jury instruction is ' "evidence sufficient to deserve consideration by the jury, i.e., evidence from which a jury composed of reasonable [persons] could have concluded that the particular facts underlying the instruction did exist . . . ."  [Citation.]'  [Citations.]  'Evidence is substantial if a reasonable jury could find it persuasive [citation] and therefore conclude " ' "that the particular facts underlying the instruction did exist" ' " [citation].' [Citation.]"  (*Bay*

7

*Guardian Co. v. New Times Media LLC* (2010) 187 Cal.App.4th 438, 465-466.)  "We review the evidence most favorable to the applicability of the requested instruction, as a party is entitled to that instruction if that evidence could establish the elements of the theory presented.  [Citation.]"  (*Ash v. North American Title Co.* (2014) 223 Cal.App.4th 1258, 1277.)

Respondent's counsel objected to appellant's proposed instruction because appellant had "not put forth a prima facie case for liability on the part of Ruhof."  Appellant's counsel replied: "There's undisputed evidence that the . . . sponge is what introduced the pseudomonas found in [respondent's] knee into the facility. . . . [¶] . . . [Appellant] had the right to assume that the . . . sponges that they were supplied with were not contaminated.  The fact that they were, it's a products liability theory.  I'm not required to produce evidence of a standard of care or of a packaging expert."

The court refused to give appellant's instruction.  It reasoned:  "[T]here's not been sufficient evidence of a breach of the standard of care presented in this case, nor has there been evidence of res ipsa [loquitur], which requires, at a minimum, the plaintiff to, in this case, prove that an event would not happen without negligence."  When appellant asked the court to indicate the applicable standard of care, it replied:  "There's no showing of negligence by Ruhof Corporation.  There's just a showing that . . . pseudomonas contaminated the sponge, but there's been no showing that that was the result of negligence."

When appellant's counsel told the court that he was proceeding on a "products liability theory" and was "not required to produce evidence of a standard of care," he in effect was saying that Ruhof was strictly liable for any defect in the sponge.  "A manufacturer . . . may be held strictly liable for placing a defective product on the market if the plaintiff's injury results from a reasonably foreseeable use of the product. [Citation.]  Strict product liability may be premised upon a theory of design defect, manufacturing defect or failure to warn.  [Citation.]"  (*Chavez v. Glock, Inc.* (2012) 207

8

Cal.App.4th 1283, 1302.) Where strict liability applies, it is unnecessary to prove negligence. But "the plaintiff must prove a defect caused injury. [Citation.]" (*Id.*, at p. 1304.)

"Because an appealed judgment is presumed correct and an appellant has the burden to show error, we cannot conclude that the refusal to give an instruction was error absent an adequate showing that the proposed instruction was proper. [Citation.]" (*Bell v. H.F. Cox, Inc.* (2012) 209 Cal.App.4th 62, 80.) Accordingly, appellant has the burden of showing that substantial evidence supports its theory that the sponges were defective when Ruhof placed them on the market. Appellant contends that substantial evidence establishes "that Ruhof's sponge had [an] insufficient amount of preservative when it was placed in the marketplace." In support of this contention, appellant cites the deposition testimony of Marc Esquenet, which was read to the jury, and the trial testimony of Jessica Gruendler.

Esquenet was a chemist who worked for Ruhof. He testified as follows: The sponges were shipped to appellant in a sealed plastic bag. The package contained preservatives "to prevent the growth of bacteria in the product." After the production and shipping of the sponges, "the preservation system . . . was compromised by extended exposure to a challenge organism that exhausted or used up the preservative." The challenge organism was a bacteria that entered the plastic bag. "All plastics are permeable." Esquenet did not know how, when, or where the bacteria had entered the plastic bag. He did not "have enough evidence to make a determination" whether the bacteria had entered the plastic bag "at Ruhof's facility or in transit or after it [got] to [appellant]." As a preventive measure, Ruhof immediately doubled the amount of preservative. Thereafter, it has received no report of contaminated sponges.

Jessica Gruendler was a registered nurse with a master's degree in nursing. Appellant called her as an expert witness on the sterilization of surgical instruments. She opined that appellant's sterilization procedures complied with the applicable standard of

9

care.  Over respondent's no "[f]oundation" objection, Gruendler further opined that Ruhof's doubling of the amount of preservative in its sponges "would tell me that their investigation led to a defect in their initial product."  The objection to Gruendler's further opinion should have been sustained because it was based on sheer speculation, pure and simple.  (*People v. Richardson* (2008) 43 Cal.4th 959, 1008; *Jennings v Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App. 4th 1108, 1117.)

The testimony of Esquenet and the admissible testimony of Gruendler is not substantial evidence that Ruhof's sponge was delivered defectively because, as appellant claims, it "had [an] insufficient amount of preservative when it was placed in the marketplace."  No expert testified as to what would be a sufficient amount of preservative and whether Ruhof's sponges contained that amount.  The bare fact that, as a preventive measure, Ruhof doubled the amount of preservative does not establish that the original amount was insufficient.  Esquenet testified that the sponges had been manufactured since the mid-1980s "[w]ith, essentially, the same formulation."  The sponges received by appellant were the only ones produced by Ruhof that tested positive for contamination.  "No other customer of Ruhof since the mid[-]1980s has ever complained of a problem with the use" of its sponges.

### Disposition

The judgment is affirmed.  Respondent shall recover his costs on appeal.

CERTIFIED FOR PUBLICATION.


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

10

Martin  J. Tangeman, Judge

Superior Court County of San Luis Obispo

_____


Prindle, Amaro, Goetz, Hillyard, Barnes & Reinholtz, for Appellant.


Jeffrey D. Stulberg; Stulberg Law.  Neil S. Tardiff, Tardif Law Offices, for Respondent.