Filed 7/28/14  Zepeda v. County of Los Angeles CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SEVEN

| | |
|---|---|
| ISAIAH SALVADOR ZEPEDA, a Minor, etc. | B246719 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC450200) |
| v. | |
| COUNTY OF LOS ANGELES, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Malcolm H. Mackey, Judge.  Reversed and remanded.

Jay S. Bloom for Plaintiff and Appellant.

Hurrell Cantrall, Thomas C. Hurrell and Melinda Cantrall for Defendants and Respondents.

_____

Isaiah Salvador Zepeda (appellant) is a four-year-old boy. His father, Salvador Zepeda (decedent) was shot by Los Angeles Sheriff's Deputies in East Los Angeles in November 2008. Appellant and other plaintiffs filed a complaint against the County of Los Angeles in November 2010. A Second Amended Complaint was filed against Deputies Hugo Ramos and Joseph Manfree and the County of Los Angeles (collectively referred to as respondents). It alleged causes of action for (1) civil rights violations (42 U.S.C., § 1983), (2) violation of Government Code section 845.6, (3) battery, and (4) "survival of personal injury claim." The second cause of action was subsequently dismissed. Respondents filed a motion for summary judgment as to the remaining three causes of action. The trial court granted the motion, and judgment was entered on behalf of respondents. Appellant appealed. We reverse the judgment (order granting summary judgment) and remand.

### FACTUAL & PROCEDURAL BACKGROUND

At approximately 2:00 a.m. on November 30, 2008, Deputies Ramos and Manfree, on duty in a marked patrol car, responded to a call of shots fired in the vicinity of Floral Street in East Los Angeles. When the deputies were on Humphreys Boulevard, they saw decedent running in their direction. The deputies stopped their car and exited. The deputies fired their service weapons, killing decedent. The deputies reported that they observed decedent retrieve what appeared to be a handgun from his waistband and they later determined that decedent had been holding an air pistol.

The plaintiffs in the Second Amended Complaint were appellant, by and through his guardian ad litem, Leah Garcia, Garcia as an individual, and decedent's parents Salvador Zepeda (Father) and Maria Xochitl Zepeda-Alarcon (Mother).

In their summary judgment motion, respondents made the following arguments: (1) plaintiffs could not establish a violation of the Eighth Amendment because decedent was not a prisoner; (2) there was no violation of decedent's Fourth Amendment rights because the deputies did not use unreasonable force; (3) the deputies were entitled to qualified immunity because their actions were not clearly established as unreasonable or unlawful; (4) plaintiffs could not establish unreasonable use of force by the deputies as to

2

the battery cause of action; (5) the survival of personal injury cause of action was duplicative of other causes of action; (6) no wrongful death cause of action could be established because the actions of the deputies were reasonable and privileged; and (7) Father and Mother could not maintain any causes of action on behalf of decedent since they were not personally injured and they were not financially supported by decedent.

Respondents submitted the declarations of Deputies Ramos, Manfree and their attorney, Erica Biano, in support of their motion. Deputy Ramos's and Deputy Manfree's declarations each stated that decedent "retrieved what appeared to be a semi-automatic handgun from his waistband, pointing it toward us. [¶] 11. Fearing for my life, and the life of my partner, I fired my service weapon. [¶] 12. It was later determined that decedent's handgun was actually an air pistol or BB gun . . . ."

Attached to Biano's declaration were various pleadings, discovery responses, and transcripts of Mother and Father's deposition testimony.

Mother and Father dismissed their claims prior to the hearing on the summary judgment motion. Leah Garcia was later dismissed as a plaintiff in her individual capacity. Appellant also dismissed the County from the first cause of action for violation of civil rights.

In opposition to the summary judgment motion, appellant submitted several declarations.

Jose Roberto Retana stated he lived on Humphreys Boulevard and at approximately 1:00 a.m. he heard gunshots, went outside and saw police officers. He saw a body lying on the street but did not see a gun of any type.

Jenni Bravo stated she lived on Humphreys Boulevard and went outside her house at approximately 2:00 a.m. when she heard gunshots. She saw a body lying on the street in front of her house but did not see a gun. She went back in the house to put on a sweater. When she went back outside she saw a gun lying on her front lawn, close to the body. She had known decedent and observed him on a frequent basis. He was polite and never aggressive. He was not a gang member and she never saw him with a gun of any type.

3

Carlos Ross, Bravo's grandson, submitted a declaration containing essentially the same statements as Bravo's.

Mother stated in her declaration that she never saw decedent ever touch or carry any kind of gun, including an air soft gun or a BB gun. She said decedent was never physically aggressive, had never been convicted of a crime and was not involved in gangs. She said that for him to possess or aim a gun at the police would have been totally out of character.

Leah Garcia stated in her declaration that she had been the girlfriend of decedent for three months and she is the mother of appellant. She never saw the decedent hit anyone or be physically aggressive and never saw him touch or carry a gun of any kind.

In addition, appellant's attorney submitted a transcript of a recorded statement by a witness on the night of the incident, which he received in connection with a discovery response. The transcript showed that George Sandoval was interviewed by deputy sheriffs a few hours after the incident. Sandoval told the deputies he was coming out of a party at a house near Humphreys and Folsom at approximately 2:00 a.m. and saw decedent running from the police. Sandoval was on the other side of the street and decedent was running away from him. Two police officers got out of their car and Sandoval heard them tell someone to freeze. He heard three shots (but also said 10). He did not see anything in the decedent's hands and saw him "put up his hands like that" and fall to the ground. His hands were later described by the sheriffs as having his arms bent at 90 degrees with his hands parallel to his head.

Appellant's attorney stated in a declaration that Sandoval was apparently not available and his efforts to locate him were unsuccessful.

At the hearing on the motion, the court issued a tentative ruling. Appellant's counsel argued he had standing to bring a wrongful death lawsuit as an heir.

The court indicated in its ruling that appellant could not bring a civil rights claim or a claim for battery in his own individual capacity. The court found the second amended complaint did not allege a cause of action for wrongful death. It further ruled

4

that a wrongful death cause of action could not be brought in appellant's name.[1]

Judgment was entered in favor of respondents.  Only appellant appealed.

*DISCUSSION*

*1. Rules of Summary Judgment*

A trial court properly grants summary judgment or adjudication if there is no triable issue of material fact and the issues raised by the pleadings may be decided as a matter of law.  (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)  To secure summary judgment or adjudication, a moving defendant may show that one or more elements of the cause of action cannot be established or that there is a complete defense to the cause of action.  Once the moving defendant has met its burden, the burden shifts to the plaintiff to show that a triable issue of fact exists as to the cause of action or the defense thereto.  (Code Civ. Proc., § 437c, subd. (o)(2); *Aguilar, supra,* 25 Cal.4th at p. 849.)  We review a trial court's decision to grant summary judgment de novo, considering all of the evidence set forth in the supporting and opposing papers, if not subject to any valid evidentiary objections, and all uncontradicted inferences reasonably deducible from that evidence.  (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.)  We exercise our independent judgment in determining whether there are no triable issues of material fact and if the moving party is thus entitled to judgment or adjudication as a matter of law.  (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334-335.)  We must uphold the judgment or adjudication if it is correct on any ground that the parties have had an adequate opportunity to address on appeal, regardless of the reasons the trial court gave.  (*Bell v. H.F. Cox, Inc.* (2012) 209 Cal.App.4th 62, 71; Code Civ. Proc., § 437c, subd. (m)(2).)

---

[1]     The court stated, inter alia: "[Appellant] did not dispute the cause of action in his individual capacity.  [Appellant's] own rights were not violated; therefore, he may not bring this action in his own individual capacity, despite the allegation. . . .  [Appellant's] own rights were not violated.  It was the rights of the deceased."

5

*2. Section 1983 Claim*

42 United States Code, section 1983 (section 1983) provides that a plaintiff may allege a deprivation of a right secured by the United States Constitution or federal law, by a person acting under color of state law.[2]  Appellant brought his section 1983 claim citing a violation of the Fourth and Eighth Amendments of the United States Constitution.

The Eighth Amendment provides: "Excessive bail shall not be required nor excessive fines imposed, nor cruel and unusual punishments inflicted."

"In general, the protections of the Eighth Amendment do not attach unless the victim has been tried or sentenced for a crime." (*Ochoa v. Superior Court* (1985) 39 Cal.3d 159, 174.)  A pretrial detainee is not protected by the Eighth Amendment, but by the Fourteenth Amendment. (*Ibid.*)  Since decedent was not a prisoner nor a pretrial detainee, nor in any kind of custody when he was shot, the Eighth Amendment claim does not apply.  We therefore discuss the section 1983 claim as it relates to the Fourth Amendment.

*a. Fourth Amendment*

When an excessive force claim arises in the context of a police confrontation, it invokes the protections of the Fourth Amendment which guarantees the right to be free from unreasonable seizures. (*Graham v. Connor* (1989) 490 U.S. 386, 394.)  A seizure triggering the Fourth Amendment's protections occurs when government officials have restrained the liberty of a citizen by means of physical force or show of authority. (*Terry v. Ohio* (1968) 392 U.S. 1, 19, fn. 16.)

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of "'the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against the countervailing

---

[2]  Section 1983  provides:  "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

governmental interests at stake. [Citations.] Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. [Citation.] Because '[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,' [citation], however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. [Citation.]" (*Graham v. Connor, supra*, 490 U.S. at p. 396.)

"'The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather that with the 20/20 vision of hindsight. [Citation.] . . . [T]he question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" (*Martinez v. County of Los Angeles* (1996) 47 Cal.App.4th 334, 343, quoting *Graham, supra,* 490 U.S. at pp. 396-397.) "In calculating whether the amount of force was excessive, a trier of fact must recognize that peace officers are often forced to make split-second judgments, in tense circumstances, concerning the amount of force required. [Citation.]" (*Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 527-528.)

Where potential danger, emergency conditions, or other exigent circumstances exist, the Supreme Court's definition of reasonableness is comparatively generous to the police. An officer may reasonably use deadly force when he or she confronts a suspect and believes the suspect's actions indicate an intent to attack. (*Brown v. Ransweiler, supra,* 171 Cal.App.4th at p. 528.)

b. *Qualified Immunity of individual defendants*

A law enforcement officer is entitled to qualified immunity if a reasonable officer in his position could have believed that his conduct was lawful. (*Reichle v. Howards*

7

(2012) ___U.S.___ 132 S.Ct. 2088; *Wilkinson v. Torres* (9th Cir. 2010) 610 F.3d at p. 551.)

Respondents argue that the officers were entitled to qualified immunity. Appellant contends that the deputies cannot assert qualified immunity because they shot an unarmed man.

In *Saucier v. Katz* (2001) 533 U.S. 194, the United States Supreme Court set forth a two-prong test for determining whether a government official can assert qualified immunity. According to *Saucier*, a court must first decide whether the plaintiff has shown a violation of a constitutional right. Next, it must decide if the right was clearly established. (533 U.S. at pp. 201-202.) Subsequently, in *Pearson v. Callahan* (2009) 555 U.S. 223, the Supreme Court reconsidered the *Saucier* test and concluded the two-step process should not be mandatory and lower courts should use their discretion in deciding whether the test should be rigidly applied or followed in the order prescribed. (555 U.S. at pp. 236-239.) In *Pearson*, police officers were sued for the conduct in performing a search during a criminal investigation. The court concluded that because the plaintiff could not establish the officers violated clearly established law, the officers were entitled to qualified immunity. (555 U.S. at pp. 243-245.)

"To be clearly established, a right must be sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.'" [Citations] (*Reichle, supra*, 132 S.Ct. at p. 2093.)

In *Slattery v. Rizzo* (4th Cir. 1991) 939 F.2d 213 a police officer approached a suspect in a car on foot. The officer could not see the suspect's hands, and the officer shot him. (*Id*. at p. 215.) The court held that under the undisputed facts, a reasonable officer could have had probable cause to believe the suspect posed a serious threat of personal harm, and therefore was entitled to qualified immunity. (*Id*. at pp. 216-217.)

We now examine the evidence submitted by the parties to determine whether summary judgment should have been granted as to the first cause of action.

Respondents, as the parties moving for summary judgment, proffered the declarations of the officers stating that they saw the decedent running towards them

pointing a gun, and that they reasonably were in fear for their lives when they fired. The declarations also alleged that the decedent was found to have been holding an air pistol. Respondents thus met their initial summary judgment burden by showing that they were entitled to qualified immunity, which was a complete defense to the causes of action for violation of section 1983. The burden then shifts to appellant to establish that a triable issue of fact exists.

Appellant contends the declarations submitted in opposition to the summary judgment motion establish that a triable issue of fact exists because an essential element of their defense, that the decedent had a gun and pointed it at them, was not true.

*c. Evidence presented by plaintiffs*

Appellant contends the declarations submitted in support of the summary judgment establish the shooting was unreasonable and unjustified in violation of the Fourth Amendment and therefore the deputies were not entitled to qualified immunity. Appellant argues the declarations provided by neighbors who lived in the area established a triable issue of fact as to whether decedent was armed and whether the officers planted a gun after the shooting. Appellant offers the declarations of friends and relatives of decedent to establish that decedent had no intent to shoot the officers and was not even carrying a weapon. Finally, appellant offers the transcript of an interview with a witness, George Sandoval, to establish that decedent was actually surrendering to deputies with his hands up and was not aiming a weapon at them.

*1. Sandoval Interview*

The transcript submitted by appellant purports to show that Sandoval stated in his interview that decedent had his hands up, as if to surrender.

In their points and authorities in reply to appellant's opposition to the summary judgment motion, respondents contended the Sandoval declaration constituted inadmissible hearsay because it did not fall within the spontaneous utterance or business record exception and was not certified. The trial court did not rule on these objections.

Respondents request that we rule upon their objections to Sandoval's declarations. If objections are not ruled upon in a summary judgment proceeding, the objections are

9

presumed overruled and are preserved for appeal. (*Reid v. Google Inc.* (2010) 50 Cal.4th 512, 534.)

### a. Hearsay

Hearsay evidence is evidence of a statement made by someone other than the witness or the declarant. As a general rule, hearsay is not admissible when it is offered to prove the truth of the matter asserted. (Evid. Code, § 1200.) There are several exceptions to this rule, codified in Evidence Code sections 1201 et seq. We address the business records and spontaneous utterance exceptions claimed by appellant.

### b. Business records exception

The business records exception of Evidence Code section 1271 provides: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if: [¶] (a) The writing was made in the regular course of a business; [¶] (b) The writing was made at or near the time of the act, condition, or event; [¶] (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

Even though there may be a duty to file certain reports, such requirement does not transform a police officer's report of an accident into competent, reliable, trustworthy evidence merely because the information was contained in the report. (See *People v. Hernandez* (1997) 55 Cal.App.4th 225, 240.) Here, as in *People v. Baeske* (1976) 58 Cal.App.3d 775, 781, the source of the information was Sandoval, not a public employee with a duty to observe the facts or report them accurately. Thus it was not rendered admissible by the business records exception.

Furthermore, there is nothing to show that it was transcribed from an official interview. As respondents contend, the transcript is not certified, nor is there any accompanying declaration by the officers who participated in the interview that the transcript is accurate. The Sandoval declaration is not admissible under the business records exception. Respondents' objection on these grounds should be sustained.

10

### c. Spontaneous utterance

Evidence Code section 1240 provides "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception." Whether a statement can be admitted under the spontaneous statement exception is largely a question of fact left to the court's discretion. (*People v. Smith* (2007) 40 Cal.4th 483, 519.) "'"Neither lapse of time between the event and the declarations nor the fact that the declarations were elicited by questioning deprives the statements of spontaneity if it nevertheless appears that they were made under the stress of excitement and while the reflective powers were still in abeyance." [Citations.]'" (*People v. Thomas* (2011) 51 Cal.4th 449, 495-496; italics deleted.) A finding that a statement made 30 minutes to an hour later after an event is not spontaneous is not an abuse of discretion. (*People v. Smith, supra,* 40 Cal.4th at p. 519.)

The transcript of Sandoval's interview indicates it was taken approximately four hours after the shooting. There are no facts here which demonstrate Sandoval was under stress at the time of the interview. There was no testimony about what happened between the time of the shooting and the interview. It was not established that Sandoval had no reason to fabricate. For these reasons, we cannot conclude that Sandoval's statements were admissible under the spontaneous statement exception to the hearsay rule. Respondents' objection should be sustained.

### 2. Retana, Ross and Bravo Declarations

### a. Character evidence

The declarations of Bravo and Ross, as well as the declaration from Mother, purport to attest that decedent could not have raised a gun at the police because he had never been known to possess guns, did not associate with gang members, and had no criminal history.

Evidence Code section 1101, prohibiting admission of evidence of a person's character to prove conduct of that person on specified occasion unless relevant to another

11

issue, applies in civil cases. (*Brown v. Smith* (1997) 55 Cal.App.4th 767, 790, fn. 15.) Character evidence is of slight probative value. (*Holdgrafer v. Unocal Corp.* (2008) 160 Cal.App.4th 907, 928, fn. 10.)

The evidence of decedent's criminal history and character evidence, even if established as reliable, does not raise a triable issue of material fact. To the extent these declarations purport to establish decedent's character, they are inadmissible.

### b. Evidence of a gun

Appellant contends a triable issue of fact exists as to whether a gun was planted after the shooting, based upon the declarations from Bravo, Ross and Retana. Bravo was Ross's grandmother and they lived in the same home on the street where decedent was shot. Retana lived nearby on the same street.

Declarations from Bravo, Ross and Retana each stated they heard gunshots, immediately went outside, saw the body lying in the street, but did not see a gun of any type. Bravo and Ross both stated they went back into their home, came out a few minutes later and saw a gun lying on the lawn, close to the body.

Respondents objected to those declarations on the grounds they were speculative, irrelevant and inadmissible.

Based on our review of these declarations, we conclude that they were relevant and admissible and did raise a triable issue of fact as to whether decedent possessed a gun. It is undisputed the deputies were dispatched to investigate shots fired in the area. The deputies both stated they saw an individual running towards them who retrieved what appeared to be a gun from his waistband and pointed it at them.

The declarations submitted by appellant directly dispute the deputies' statements because they all state there was no gun lying on the ground. The declarations submitted by respondents state that the deputies were not in doubt as to whether decedent was holding a gun. They stated they saw him reach for what appeared to be a weapon, point it, and they saw the weapon lying on the ground. Thus a triable issue of fact exists because the Retana, Bravo, and Ross declarations all stated said there was no gun lying on the ground. The deputies' declarations did not state the object which they thought

resembled a gun was not actually a gun. They did not say they were unable to see if he had a gun. The deputies said the decedent had a gun but it was an airsoft gun. The officers' credibility was thus called into question because the three declarations directly conflicted with their statements. Therefore there is a triable issue of fact as to whether decedent had a gun. This issue would bear directly on the officers' ability to assert a qualified immunity defense as to the section 1983 cause of action and thus summary judgment should not have been granted on this cause of action.

*3. Battery*

In order to establish a battery claim against a peace officer, a plaintiff must show the officer acted unreasonably. (*Brown v. Ransweiler, supra,* 171 Cal.App.4th at p. 527.) State law battery claims are the counterparts to federal civil rights claims of excessive use of force. (*Ibid.*) The same standards are used, i.e. whether the officers' action are objectively reasonable in light of the facts and circumstances confronting them. (*Id.* at p. 528.)

Appellant alleges summary judgment should not have been granted as to the battery cause of action because the declarations establish there was a triable issue of fact as to whether decedent was armed or performed any act indicating an intent to attack. In addition, appellant contends that the County is liable for the acts of its employees pursuant to Government Code section 815.2, subdivision (a).

Here, as outlined in the discussion of the section 1983 claim, the declarations proffered by appellant do raise a triable issue of fact as to whether decedent had a gun. The issue of whether the deputies acted reasonably in deciding to use deadly force, affects the determination of whether a cause of action for battery may be maintained. (*Brown v. Ransweiler, supra,* 171 Cal.App.4th at pp. 530-533.) Therefore, summary judgment should not have been granted as to the third cause of action for battery.

*4. Survivor Claim*

The Second Amended Complaint alleges: "5. At all times herein mentioned, plaintiffs, and each of them, were persons authorized by California Code of Civil Procedure section 377.60, to bring an action for the wrongful death of the decedent,

13

Salvador Zepeda, Jr. In addition, at all times herein mentioned, plaintiff Isaiah Salvador Zepeda, a minor (appellant), by and through his Guardian ad Litem, Leah Garcia, was the decedent's successor in interest and authorized to bring a survival action by California Code of Civil Procedure section 377.30."

The first cause of action for violation of section 1983 and the third cause of action for battery each allege that appellant suffered damages due to the loss from the care, comfort, and society of decedent, and the loss of financial support from decedent. Both causes of action allege that appellant is entitled to punitive damages because of defendants' malicious and oppressive actions.

Code of Civil Procedure section 377.30 provides: "A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest . . . and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest." A survivor claim is asserted on behalf of the decedent, whereas a wrongful death claim is asserted by a decedent's heir, on his or her own behalf. (*Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1281.)

Appellant was able to bring the first two causes of action as a survivor of decedent. A survivor cause of action is distinct from a cause of action for wrongful death. Unlike a cause of action for wrongful death, a survivor cause of action is not a new cause of action that vests in the heirs on the death of the decedent, but is instead a separate and distinct cause of action which belonged to the decedent before death, but by statute, survives that event. (*Quiroz v. Seventh Ave. Center*, *supra,* 140 Cal.App.4th at p. 1264.) These claims are technically asserted by different plaintiffs and seek compensation for different injuries. (*Id.* at p. 1278.) The survival statutes do not create a cause of action, but provide for the post-death enforcement cause of action on behalf of the person injured. Damages for a survivor cause of action are limited to those sustained by the decedent or incurred before death. (*Id.* at p. 1264.)

There are significant consequences and distinctions that flow from the particular legal capacity in which a party sues. (*Birl v. Heritage Care LLC* (2009) 172 Cal.App.4th

14

1313, 1322.) A complaint for a survivor cause of action must allege that appellant was acting in a representative capacity for the decedent.

Respondents contend that appellant merely identifies himself as a successor-in-interest but does not indicate he is pursuing his claim in such a capacity. In *Quiroz*, the complaint identified the plaintiff as the brother and conservator of the decedent, but did not allege that the plaintiff was acting in a representative capacity for the decedent or on his behalf. (*Quiroz v. Seventh Ave. Center*, *supra,* 140 Cal.App.4th at p. 1269, fn. 11.) Here, the Second Amended Complaint identifies appellant as the successor-in-interest to the decedent and alleges he was authorized by Code of Civil Procedure section 377.30 to bring the survival action. We conclude this was a sufficient allegation to establish his standing.

Next, respondents contend that appellant cannot recover for a violation of decedent's federal constitutional rights.

"In § 1983 actions, however, the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action." (*Moreland v. Las Vegas Metropolitan Police Dept.* (9th Cir. 1998) 159 F.3d 365, 369.) Under 42 United States Code section 1988, a section 1983 claim that accrued before death survives the decedent when state law authorizes a survival action as a suitable remedy. Since California law allows for the survival of a cause of action belonging to the decedent (Code Civ. Proc., § 377.30), appellant was entitled to bring this claim.

Respondents contend that appellant "admits" that the causes of action for violation of constitutional rights and battery were brought in an individual capacity, but do not indicate their support for this contention. Since appellant obviously was not present at the shooting, the only way he could be alleging these causes of actions is as a survivor or as a successor-in-interest to decedent.

5. *Wrongful Death Cause of Action*

In contrast to a survivor cause of action, a wrongful death cause of action is a new cause of action vesting in the heirs of the decedent at the time of death. It is a statutory

claim which belongs to a specified group of persons which is designed to compensate them for loss of companionship and other damages suffered as a result of the decedent's death. (*Quiroz v. Seventh Ave. Center*, *supra,* 140 Cal.App.4th at pp. 1263-1264.) The damages recoverable are expressly limited to those not recoverable in a survivor action.

Code of Civil Procedure section 377.60 provides that "A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by decedent's personal representative on their behalf: [¶] (a) The decedent's . . . children."

Appellant contends that he can plead the theory upon which the wrongful death claim is based. He contends he clearly alleged his status as an heir to the decedent who is authorized to prosecute an action for wrongful death pursuant to Code of Civil Procedure section 377.60.

The elements of a wrongful death cause of action are a tort, such as negligence and resulting death. (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 806.)

The fourth cause of action in the Second Amended Complaint alleged that after respondents' wrongful acts, "certain causes of action arose in favor of the decedent . . . claims for the violation of his civil rights under 42 U.S.C. § 1983, violation of California Government Code section 845.6, and battery. [¶] . . . Because the [respondents] . . . acted maliciously, oppressively, with ill will . . . the decedent was entitled to an award of punitive damages against said [respondents], with the exception of defendant County of Los Angeles. [¶] . . . [T]he decedent died. [Appellant] is entitled to recover such punitive damages . . . .

What appellant clearly is asserting in the fourth cause of action is the right of decedent to punitive damages. While punitive damages are recoverable in a survivor's section 1983 action, a wrongful death claim only allows a plaintiff to recover only those damages which are authorized by the state wrongful death statutes. (*Parker v. Superior Court* (1985) 175 Cal.App.3d 1082, 1087.) Code of Civil Procedure sections 377.60-377.62 authorize a statutory claim for wrongful death to compensate specified heirs of a decedent for losses suffered as a result of the death. A wrongful death cause of action

16

should be asserted on an individual basis, that is appellant should be bringing this cause of action as an individual, and not as a successor-in-interest to the decedent. (*San Diego Gas & Electric Co. v. Superior Court* (2007)146 Cal.App.4th 1545, 1550-1551.)

It is clear that the fourth cause of action is not a wrongful death claim but is merely reasserting the right of appellant to bring the first and third causes of action as a survivor of decedent. Therefore, summary judgment for the fourth cause of action was properly granted in favor of respondents.

*6. Standing*

Respondents contend appellant's tort claim only alleged his own damages, and no survivor claim and this precludes appellant from bringing a cause of action under the survivorship rules.

An injured party may not maintain an action against a public entity unless a claim has been presented to the entity pursuant to Government Code sections 911.2 and 945.4. The purpose of this rule is to provide sufficient information to the entity to investigate the claims and explore settlement. (*Nelson v. County of Los Angeles* (2003) 113 Cal.App.4th 783, 796-797.) When two or more persons suffer separate and distinct injuries from the same act, each person must submit a claim and one cannot rely on a claim presented by another. (*Id*. at p. 796). The statutory requirements must be met by the person who has filed the lawsuit and the doctrine of substantial compliance does not apply. Thus where a decedent's estate did not file a claim and his mother brings a lawsuit in her individual capacity, the mother cannot bring a survivorship claim. (*Id*. at p. 797.)

The tort claim submitted by appellant and decedent's parents and girlfriend alleges the date and time of the incident and cites the violation of decedent's "state and federal constitutional and civil rights, resulted in the decedent's wrongful death, and constituted battery and assault upon the decedent. The above violations cause the claimants to suffer severe emotional distress, loss of care, comfort, society and consortium, financial support from the decedent and economic damages."

Contrary to respondents' contentions, the tort claim clearly alleges that the civil rights and constitutional rights of decedent were violated and that the individual

17

claimants suffered emotional distress and loss of care and financial support from the decedent.  Thus both individual and survivor rights were alleged in their tort claim.

*DISPOSITION*

We reverse the trial court's order granting summary judgment.  The trial court shall enter an order granting summary adjudication as to the fourth cause of action and conduct further proceedings consistent with this opinion.  Appellant shall recover his costs on appeal.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**

**ZELON, J.**