Filed 3/7/19; pub. order 3/22/19 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DANIEL NIETO,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>FRESNO BEVERAGE COMPANY, INC.,<br><br>    Defendant and Appellant. | F074704<br><br>(Super. Ct. No. 16CECG02614)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Mark W. Snauffer, Judge.

Morgan, Lewis & Bockius, Thomas M. Peterson, Brian C. Rocca, and Kathryn T. McGuigan for Defendant and Appellant.

Yoon Law, Kenneth H. Yoon, Stephanie E. Yasuda, and Brian G. Lee; Justice Law Corporation, Douglas Han, Shunt Tatavos-Gharajeh, and Daniel J. Park for Plaintiff and Respondent.

-ooOoo-

Plaintiff Daniel Nieto was employed for many years as a delivery driver for defendant Fresno Beverage Company, Inc., doing business as Valley Wide Beverage Company (VWB). After being terminated from his employment, Nieto filed a class action lawsuit against VWB alleging various wage and hour violations under California labor law. VWB responded by filing a petition to compel arbitration, since Nieto had signed a written arbitration agreement when he was hired. VWB argued that under the Federal Arbitration Act (9 U.S.C. § 1 et seq., the FAA) Nieto must be ordered to arbitrate the dispute in accordance with the terms of the parties' arbitration agreement. Nieto opposed the petition, primarily arguing that his employment at VWB came within a statutory exemption to the FAA granted to transportation workers engaged in interstate commerce. Nieto reasoned that since the FAA did not apply, a California law allowing court actions on wage claims notwithstanding the existence of an arbitration agreement (i.e., Lab. Code, § 229) was not preempted by the FAA, meaning the lawsuit may proceed in court. The trial court agreed with Nieto's exemption argument and denied the petition to compel arbitration. VWB appealed from that order. We conclude the trial court correctly found that Nieto's employment came within the FAA exemption. Accordingly, the trial court's order denying the petition to compel arbitration is affirmed.

## FACTS AND PROCEDURAL BACKGROUND

Nieto was employed by VWB as a delivery driver from April 1, 2008, to February 24, 2014. Shortly after his employment commenced, Nieto executed various documents pertaining to his employment, including an employee handbook and the arbitration agreement. The arbitration agreement provided among other things that arbitration was to be the exclusive remedy for all employment disputes, including disputes related to wage and hour issues. For reasons that are not disclosed in the record, Nieto's employment was terminated on February 24, 2014.

On August 12, 2016, Nieto filed a class action complaint in the trial court against VWB for alleged violations of California wage and hour laws. The class action

2.

complaint sought, on behalf of Nieto and the class of other similarly situated current and former employees of VWB, meal period and rest break wages, minimum and overtime wages, and other wages and penalties allegedly due. The causes of action consisted of the following: (1) first cause of action for violation of Labor Code sections 226.7 and 512 (regarding meal period and rest break wages); (2) second cause of action for violation of Labor Code sections 510 and 1194 (regarding minimum and overtime wages); (3) third cause of action for violation of Labor Code section 203 (regarding waiting time penalties); (4) fourth cause of action for violation of Labor Code section 226 (regarding record keeping); (5) fifth cause of action for unfair business practices under Business and Professions Code section 17200 (premised on the Labor Code violations of the preceding causes of action).

On September 14, 2016, VWB filed its petition to compel arbitration. The petition asserted that the arbitration agreement came under the broad coverage of the FAA, which law reflects a liberal federal policy favoring arbitration and requiring courts to enforce arbitration agreements according to their terms. The petition correctly noted the general coverage provision of the FAA (i.e., 9 U.S.C. § 2, or section 2) applies broadly to contracts "involving" interstate commerce that contain arbitration clauses, including where the arbitration agreement is between employers and employees. (See *Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 119 (*Circuit City*).) Finally, VWB's petition pointed out that where the FAA is applicable, state laws interfering with enforcement of arbitration rights, such as California Labor Code section 229, are preempted by the FAA. (See *Perry v. Thomas* (1987) 482 U.S. 483, 484, 492 [so holding].)

In support of its petition to compel arbitration, VWB submitted a declaration specifically describing VWB's involvement in interstate commerce. Among other things, the supporting declaration asserted that VWB is a beverage distributor, contracting nationally and internationally, buying beer, wine and other beverages manufactured in other states and countries, and after such beverages are transported to VWB's warehouse,

3.

they are delivered to VWB customers in California. Thus, as acknowledged in VWB's petition, "[t]he products delivered by VWB's drivers are part of a continuous stream of interstate travel." Consequently, according to VWB, its economic activity plainly involved interstate commerce and the parties' arbitration agreement was and is governed by the FAA.

On or about October 4, 2016, Nieto filed his opposition to the petition to compel arbitration. Nieto's opposition asserted that as a delivery truck driver engaged in interstate commerce, his employment was excluded from the FAA's coverage based on the statutory exemption for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." (9 U.S.C. § 1, or section 1.) Thus, according to Nieto's opposition, the FAA was not applicable, no preemption applied, and all issues were to be resolved under California law. Nieto's opposition claimed that, under California law, specifically Labor Code section 229, he was entitled to have his wage claims heard in court notwithstanding the existence of the arbitration agreement. In any event, it was further argued that the arbitration agreement was entirely unenforceable because of several purportedly unconscionable provisions.

On October 11, 2016, VWB filed its reply in support of the petition to compel arbitration. VWB's reply contended that the FAA exemption did not apply to Nieto since he only delivered products within California and did not cross state lines. Further, VWB insisted that Nieto had failed to show any of the provisions of the arbitration agreement were substantively unconscionable.

The hearing on the petition was held on October 26, 2016. On October 27, 2016, the trial court denied the petition to compel arbitration, with the tentative ruling becoming the order of the court. The trial court's ruling found that the arbitration agreement was not substantively unconscionable, and therefore was enforceable. *However*, the trial court's ruling went on to explain that Nieto's employment came within the FAA's exemption provided to transportation workers engaged in the movement of interstate

4.

commerce. The trial court noted that Nieto's work qualified for the exemption even though his deliveries did not cross state lines, explaining as follows: "[VWB's] general business activities involve[d] receiving shipments from other states and countries, storing same for a short period, then tasking employees such as [Nieto] with delivery of the goods to in-state customers. . . . [A]s [Nieto's] employment involved transporting goods received from out of state, the transportation worker exemption to the FAA applie[d]." Furthermore, the trial court held that because Nieto was a transportation worker exempt from the FAA, Labor Code section 229 governed, which section "provides that an action for wage and hour claims may be maintained despite an agreement to arbitrate." The trial court then concluded: "[Nieto's] complaint is, in its entirety, an action for wage and hour violations. [Nieto's] action may thus be maintained, regardless of the arbitration provision in the employment contract between [Nieto] and [VWB]." Accordingly, VWB's petition to compel arbitration was denied.

On November 8, 2016, VWB timely filed its notice of appeal from the trial court's order denying the petition to compel arbitration.

## DISCUSSION

### I. Standard of Review

" ' " 'There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citations.]' " ' " (*Avila v. Southern California Specialty Care, Inc*. (2018) 20 Cal.App.5th 835, 839-840.) Here, as the facts appear to be undisputed, we review de novo the legal question of whether Nieto was a transportation worker exempt from the FAA. (See *Muro v. Cornerstone Staffing Solutions, Inc*. (2018) 20 Cal.App.5th 784, 790; *Omar v. Ralphs Grocery Co*. (2004) 118 Cal.App.4th 955, 959.)

5.

**II. The Trial Court Correctly Ruled the FAA Did Not Apply**

A.  The FAA Exemption

The FAA was enacted in 1925 to remedy the general hostility of American courts to the enforcement of arbitration agreements; and to effectuate that purpose, the FAA compels judicial enforcement of a wide range of written arbitration agreements.  (*Circuit City*, *supra*, 532 U.S. at p. 111.)  Section 2 of the FAA, the basic coverage provision of the FAA, makes the law applicable to contracts evidencing a transaction "involving commerce" (9 U.S.C. § 2), which language reflects that Congress intended the law's coverage to extend to the full reach of its commerce clause power.  (*Allied-Bruce Terminix Cos. v. Dobson* (1995) 513 U.S. 265, 277; *Perry v. Thomas* (1987) 482 U.S. 483, 490.)[1]  Section 1 of the FAA provides a limited exemption from the law's coverage to "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  (9 U.S.C. § 1.)  In *Circuit City*, the United States Supreme Court defined the catchall phrase " 'any other class of workers engaged in . . . interstate commerce' " to mean "transportation workers" (*Circuit City*, *supra*, at pp. 119, 121), which the court understood as "those workers ' "actually engaged in the movement of goods in interstate commerce." ' [Citation.]" (*Id*. at p. 112.)

In *Circuit City*, the Supreme Court reversed the Ninth Circuit Court of Appeal's decision that sections 1 and 2 of the FAA should be construed to exclude all employment contracts from the reach of the FAA.  (*Circuit City*, *supra*, 532 U.S. at pp. 109, 112, 124.)  In rejecting that view, the Supreme Court held that the plain meaning of "engaged in" interstate commerce in section 1 is narrower in scope than the open-ended formulation "involving" commerce in section 2 (*Circuit City*, *supra*, at p. 118), and the court

---

[1]     As the Supreme Court noted in *Citizens Bank v. Alafabco, Inc*. (2003) 539 U.S. 52, at page 56, the term "involving commerce" in the FAA is "the functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power."

explained further that this narrower construction of the section 1 exemption is consistent with the statutory purpose and context.  (*Circuit City*, *supra*, at p. 118; see *id*. at pp. 119-124.)  Applying this narrower construction, the Supreme Court concluded that the section 1 exemption, rather than exempting all employment contracts from the FAA, was limited to transportation workers.  (*Circuit City*, *supra*, at pp. 119, 121.)

The *Circuit City* case elucidated Congress' presumed intent in adopting the section 1 exemption:  "It is reasonable to assume that Congress excluded 'seamen' and 'railroad employees' from the FAA for the simple reason that it did not wish to unsettle established or developing statutory dispute resolution schemes covering specific workers. [¶]  As for the residual exclusion of 'any other class of workers engaged in foreign or interstate commerce,' Congress' demonstrated concern with transportation workers and their necessary role in the free flow of goods explains the linkage to the two specific, enumerated types of workers identified in the preceding portion of the sentence." (*Circuit City*, *supra*, 532 U.S. at p. 121.)

Having briefly introduced the nature of the FAA exemption, we turn to VWB's contentions on appeal.  In challenging the trial court's ruling that Nieto came within the FAA exemption, VWB argues that (i) the trial court applied the wrong standard, and (ii) Nieto was not a transportation worker engaged in interstate commerce.  We disagree with both contentions.

B.  The Trial Court Applied the Correct Standard

VWB first argues the trial court applied the wrong standard in evaluating whether Nieto qualified for the FAA exemption.  As summarized above, while the basic coverage provision of the FAA (9 U.S.C. § 2) uses the broadly-inclusive "involving commerce" standard, the scope of the transportation worker exemption (9 U.S.C. § 1) is limited by the narrower "engaged in" interstate commerce standard.  VWB contends that the trial court confused the two tests and failed to apply the narrower "engaged in" interstate commerce standard in deciding that Nieto qualified for the exemption.  VWB has failed

to demonstrate that the trial court made such an error.  The trial court's ruling clearly and explicitly delineated the two standards, explaining that the FAA has general application to contracts "involving commerce," but noting further "there is a narrow exemption" applied to transportation workers engaged in foreign or interstate commerce, which the trial court noted has been defined as "workers 'actually engaged in the movement of goods in interstate commerce.' "  The trial court then proceeded to analyze the merits of Nieto's contention that he was "a driver engaged in interstate commerce, and . . . thus expressly exempt from the FAA."

The trial court understood and applied the correct standard when it analyzed the issue of whether Nieto was exempt from the FAA.

C.  Nieto Was a Transportation Worker Engaged in Interstate Commerce

Next, VWB contends that Nieto's employment as a delivery truck driver did not meet the criteria for being considered a transportation worker *engaged in interstate commerce*.  The crux of VWB's argument is that because Nieto's delivery routes did not cross state lines, but were merely intrastate, the exemption cannot apply to him.  The trial court held otherwise, and on the facts of this case, the trial court is correct.

As decided in *Circuit City*, the section 1 exemption is applicable to "transportation workers," defined as "workers ' "actually engaged in the movement of goods in interstate commerce." ' "  (*Circuit City*, *supra*, 532 U.S. at p. 112.)  Leaving aside for the moment the question of whether it was necessary for Nieto to personally transport goods across state lines to qualify for the exemption, we note at the outset that delivery truck drivers whose primary purpose is to physically transport interstate goods are consistently held to be transportation workers under section 1 of the FAA.  (See, e.g., *Lenz v. Yellow Transp., Inc.* (8th Cir. 2005) 431 F.3d 348, 351 ["Indisputably, if Lenz were a truck driver, he would be considered a transportation worker under § 1 of the FAA"]; *Palcko v. Airborne Express, Inc.* (3d Cir. 2004) 372 F.3d 588, 590, 593-594 (*Palcko*) [analysis of issue assumed that since truck drivers delivering interstate packages to customers in

8.

Philadelphia area would be within the residuary exemption, the plaintiff whose job was to closely manage, oversee and monitor those drivers would also be exempt]; *Harden v. Roadway Package Systems, Inc.* (9th Cir. 2001) 249 F.3d 1137, 1140 [finding that a delivery driver of interstate packages came within the exemption].) As one federal district court put it: "If there is one area of clear common ground among the federal courts to address this question, it is that truck drivers – that is, drivers actually involved in the interstate transportation of physical goods – have been found to be 'transportation workers' for purposes of the residuary exemption in Section 1 of the FAA." (*Kowalewski v. Samandarov* (S.D.N.Y. 2008) 590 F.Supp.2d 477, 482-483; see *Int'l Bhd. of Teamsters Local Union No. 50 v. Kienstra Precast*, *LLC* (7th Cir. 2012) 702 F.3d 954, 957 [holding truckers are transportation workers to the extent they are engaged in the movement of goods in interstate commerce].)

The key question here is whether Nieto came within the scope of the exemption even though his deliveries were exclusively to destinations within California. As indicated by the basic definition of a transportation worker in the *Circuit City* case, merely being a delivery truck driver, by itself, would not be enough since a transportation worker must also be " ' "actually engaged in the movement of goods in interstate commerce." ' " (*Circuit City*, *supra*, 532 U.S. at p. 112.) According to VWB, a delivery truck driver who does not personally cross state lines is not "engaged in interstate commerce" or engaged in the movement of interstate commerce for purposes of section 1 of the FAA, and therefore cannot qualify for the exemption. That assertion is overbroad, at least in the particular case and context before us. While it is true that a number of courts have held that if a delivery truck driver *does* cross state lines to make deliveries, that driver would obviously qualify for the exemption (see, e.g., *Garrido v. Air Liquide Industrial U.S. LP* (2015) 241 Cal.App.4th 833, 840; *Veliz v. Cintas Corp*. (N.D.Cal. 2004) 2004 U.S.Dist. LEXIS 32208, *18), VWB has not cited any clear or persuasive

9.

authority for the proposition that crossing of state lines is a necessary condition for the exemption to apply.**2**

Rather, as the trial court recognized, a transportation worker does not necessarily have to physically cross state lines in order to engage in the movement of goods in interstate commerce. In *Christie v. Loomis Armored US, Inc*. (D.Colo. 2011) 2011 U.S.Dist. LEXIS 141994, *7 (*Christie*), the court expressly rejected the argument that a worker may only qualify for the section 1 exemption if he or she delivered goods across state lines: "[A]n employee need not actually transport goods across state lines to be part of a class of employees engaged in interstate commerce. 'Interstate commerce' includes not only goods that travel across state lines but also 'the intrastate transport of goods in the flow of interstate commerce.' " (quoting *Siller v. L&F Distributors, Ltd*. (5th Cir. 1997) 109 F.3d 765 [1997 U.S.App. LEXIS 42893, *3].) In *Christie*, although there was no evidence the driver personally delivered goods across state lines, the goods she delivered intrastate were deemed to be in the stream of interstate commerce, and

---

**2** A few federal courts have attempted to synthesize the case law into a list of nonexclusive factors to assist in determining whether an employee fits within the section 1 exemption. Significantly, however, such attempts at distilling the case law have not indicated that the crossing of state lines by the employee is a requirement, but rather those courts have simply listed a number of factors to be considered, such as the following enumeration: "[F]irst, whether the employee works in the transportation industry; second, whether the employee is directly responsible for transporting the goods in interstate commerce; third, whether the employee handles goods that travel interstate; fourth, whether the employee supervises employees who are themselves transportation workers, such as truck drivers; fifth, whether, like seamen or railroad employees, the employee is within a class of employees for which special arbitration already existed when Congress enacted the FAA; sixth, whether the vehicle itself is vital to the commercial enterprise of the employer; seventh, whether a strike by the employee would disrupt interstate commerce; and eighth, the nexus that exists between the employee's job duties and the vehicle the employee uses in carrying out his duties (i.e., a truck driver whose only job is to deliver goods cannot perform his job without a truck)." (*Lenz v. Yellow Transp., Inc*., *supra*, 431 F.3d at p. 352; see *Veliz v. Cintas Corp*., *supra*, 2004 U.S.Dist. LEXIS 32208 at pp. *23-*24.)

therefore she belonged to the class of workers engaged in interstate commerce and the exemption applied.  (*Christie*, *supra*, 2011 U.S.Dist. LEXIS 141994 at p. *8; accord, *Diaz v. Michigan Logistics, Inc*. (E.D.N.Y. 2016) 167 F.Supp.3d 375, 380, fn. 3 [holding "Plaintiffs . . . were engaged in interstate transportation, notwithstanding that they did not actually drive across state lines, as Plaintiffs were directly responsible for transporting and handling automotive parts that allegedly moved in interstate commerce"].)

Similarly, in *Palcko*, *supra*, 372 F.3d 588, the transportation worker in question (Palcko) was not an actual delivery driver, but the exemption was held to apply to her because her work involved closely monitoring and directing the drivers who physically delivered interstate packages from the Airborne Express facility near the Philadelphia airport to their ultimate destinations within the Philadelphia area.  (*Id*. at pp. 590, 593-594.)  There was nothing in the record to suggest that the drivers under Palcko's supervision delivered the packages across state lines or otherwise went beyond the Philadelphia area.  Thus, in *Palcko*, not only did the drivers apparently not cross state lines in their deliveries, but the exemption was extended to someone who was not a driver – namely, their supervisor.

In *Levin v. Caviar, Inc*. (N.D.Cal. 2015) 146 F.Supp.3d 1146, 1154, the court acknowledged that guidance regarding the " 'engaged in commerce' " standard for the FAA's transportation worker exemption may be found in cases discussing an exemption to another federal law, the Fair Labor Standards Act (see 29 U.S.C. § 201 et seq., FLSA). One such case, *Bell v. H.F. Cox, Inc.* (2012) 209 Cal.App.4th 62, observed the following well-established principle:  "Intrastate deliveries of goods are considered to be part of interstate commerce if the deliveries are merely a continuation of an interstate journey. [Citations.]  Goods arriving from out of state that are unloaded and held in a warehouse before being loaded onto trucks and delivered to customers do not terminate their interstate journey if 'there is a practical continuity of movement of the goods until they reach the customers for whom they are intended.' "  (*Id.* at p. 77, quoting *Walling v.*

*Jacksonville Paper Co.* (1943) 317 U.S. 564, 568; accord, *Klitzke v. Steiner Corp*. (9th Cir. 1997) 110 F.3d 1465, 1467-1470 [same facts as *Bell*; goods retained interstate character and FLSA exemption applied]; see *Walters v. Am. Coach Lines of Miami, Inc*. (11th Cir. 2009) 575 F.3d 1221, 1226-1229 [after noting the FLSA exemption includes a requirement that carrier was engaged in interstate commerce, the court articulated same rule as *Bell* case].) Although the *Levin* court acknowledged the above principle quoted in *Bell*, the court found that it did not assist the plaintiff in the FAA case before it, which case involved the local delivery of meals prepared in local restaurants. The court held that even if ingredients for the food prepared in the restaurants may have been part of the stream of interstate commerce, the ingredients' interstate journey ended when those goods reached the restaurants. (*Levin*, *supra*, 146 F.Supp.3d at p. 1154.)

Applying the law outlined above to the instant case, we conclude that Nieto was engaged in interstate commerce during his employment as a delivery driver for VWB. The following facts were admitted by VWB in the declaration filed in support of its petition to compel arbitration: "VWB is a beverage distributor located in Fresno, California. It sells and distributes beer, wine, and other related beverages and products throughout Central California. While VWB's principal place of business is in California, it contracts with and buys from companies nationally and internationally. It[] sells beer, wine, and other beverages manufactured in the United States, including states outside of California, and countries worldwide. These beverages are delivered from out-of-state to VWB's warehouse where they are held for a short period before delivery to VWB's customers. [¶] . . . [¶] . . . VWB and its drivers, including [Nieto], are subject to and must comply with federal Department of Transportation regulations, and other federal laws and regulations governing motor vehicle safety. VWB drivers traverse interstate highways and roads." As VWB acknowledged in its points and authorities filed in support of its petition: "Even if the drivers are not transporting goods across state lines, their transportation is part of a 'practical continuity of movement' in the flow of interstate

12.

commerce. [Citations.]" It is apparent from the above information and concessions that Nieto's deliveries, although intrastate, were essentially the last phase of a continuous journey of the interstate commerce (i.e., beer and other beverages delivered to VWB's warehouse from out-of-state) being transported until reaching its destination(s) to VWB's customers. Accordingly, as a delivery truck driver for VWB, Nieto was engaged in interstate commerce through his participation in the continuation of the movement of interstate goods to their destinations. Therefore, the trial court did not err in concluding that Nieto was employed as a transportation worker engaged in interstate commerce to whom the exemption of section 1 of the FAA was applicable.[3]

Because we have concluded that the trial court correctly found Nieto was exempt from the FAA, it is unnecessary for us to address Nieto's alternative argument that the arbitration agreement was entirely unenforceable based on allegedly unconscionable provisions.

### III. Issue raised in the reply brief.

The trial court held that because Nieto was "a transportation worker and thus exempt from the FAA," Labor Code section 229[4] governed, which the trial court explained "provides that an action for wage and hour claims may be maintained despite

---

**3** Prior to oral argument, VWB informed this court of additional federal district court cases (i.e., *Magana v. DoorDash, Inc*. (N.D.Cal. 2018) 343 F.Supp.3d 891; *Lee v. Postmates Inc*. (N.D.Cal., Oct. 15, 2018, No. 18-cv-03421-JCS) 2018 U.S.Dist. LEXIS 176965, and *Lee v. Postmates Inc*. (N.D.Cal., Dec. 17, 2018, No. 18-cv-03421-JCS) 2018 U.S.Dist. LEXIS 212209). These cases appear to involve purely local deliveries of goods from local restaurants or merchants to local customers. As such, they are distinguishable from the present case in which, as explained hereinabove, the employee worked for a company in the business of distributing beer and other beverages brought in from out of state to be delivered to destinations or customers in the Central Valley, where the employee's transportation work was clearly part of the continuation of the flow of interstate commerce.

**4** Labor Code section 229 states in relevant part: "Actions to enforce the provisions of this article for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate."

an agreement to arbitrate." The trial court then concluded: "[Nieto's] complaint is, in its entirety, an action for wage and hour violations. [Nieto's] action may thus be maintained, regardless of the arbitration provision in the employment contract between [Nieto] and [VWB]." Accordingly, VWB's petition to compel arbitration was denied.

In its reply brief herein, VWB argues for the first time that the trial court may have erred in concluding that *all* of Nieto's causes of action were subject to Labor Code section 229. We decline to consider that issue here. An appellant's failure to raise an issue in his or her opening brief is ordinarily treated as a waiver of that issue (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 685), and consequently, points raised in the reply brief for the first time will generally not be considered on appeal. (*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc*. (2000) 78 Cal.App.4th 847, 894-895, fn. 10.)

## DISPOSITION

The order of the trial court is affirmed. Costs on appeal are awarded to plaintiff Daniel Nieto.

_____
DETJEN, Acting P.J.

WE CONCUR:

_____
FRANSON, J.

_____
DESANTOS, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DANIEL NIETO,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>FRESNO BEVERAGE COMPANY, INC.,<br><br>    Defendant and Appellant. | F074704<br><br>(Super. Ct. No. 16CECG02614)<br><br>**ORDER GRANTING REQUEST<br>FOR PUBLICATION** |

As the nonpublished opinion filed on March 7, 2019, in the above entitled matter hereby meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), it is ordered that the opinion be certified for publication in the Official Reports.

DETJEN, Acting P.J.

WE CONCUR:

FRANSON, J.

DESANTOS, J.

15.