Filed 7/1/21  Jones v. UPS Supply Chain Solutions CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| SUE JONES et al.,<br><br>　　　Plaintiffs and Respondents,<br><br>v.<br><br>UPS SUPPLY CHAIN SOLUTIONS, INC. et al.,<br><br>　　　Defendants and Respondents. | A160726<br><br>(City & County of San Francisco Super. Ct. No. CGC19578596) |

Defendants UPS Supply Chain Solutions, Inc. and United Parcel Service, Inc. (jointly SCS) appeal from the trial court's denial of their motion to compel plaintiffs Sue and Robert Jones to arbitrate their various wage and hour violation claims.  The trial court found the Joneses' putative class action fell within a statutory exemption from the Federal Arbitration Act (FAA) for transportation workers engaged in interstate commerce.  Its order is supported by substantial evidence and legally sound, so we affirm.

### BACKGROUND

SCS, an affiliated entity of United Parcel Service, Inc., maintains a supply logistics network that includes some 300 warehouses throughout the United States and Canada.  As described by SCS transportation division manager Jakline Seguerra, it offers a "service parts logistics solution" that

1

allows its customers to store critical high tech and other products and replacement parts in strategically located warehouses where they can be quickly sourced. When a customer needs an item, SCS arranges for customer pick-up or delivery from the warehouse by overnight carrier or local courier service. For example, Seguerra explained, "a computer manufacturer might use SCS to manage the distribution of replacement service parts to its end-users. If a customer of a computer manufacturer needs a replacement part, SCS locates the part in a warehouse and facilitates delivery from the nearest local SCS warehouse."

Arizona residents Sue and Robert Jones worked as delivery drivers for SCS individually, as a team, and through Sue's company, Efficient Delivery and Freight, LLC.[1] SCS provided several vendor identification numbers that they used to assign the Joneses work and issue payments.[2]

In 2014 Sue executed an arbitration agreement that extended to all claims or controversies between the parties, "includ[ing] contract claims, tort claims, and claims for violation of any federal, state, or other governmental law, statute (including anti-discrimination statues), regulation, or ordinance, except for any claims that are not arbitrable as a matter of law." The agreement waived "any right to bring on behalf of persons other than myself, or to otherwise participate with other persons in, any class, collective, or representative action with respect to any claim covered by this arbitration provision."

---

[1] Because they share a surname, we will refer to the Joneses by their first names for clarity. We intend no disrespect by this practice.

[2] It is unclear whether Robert worked directly for SCS and was issued a separate identification number. Rather, according to Seguerra, SCS's records indicated that he worked exclusively through Sue.

In 2019 the Joneses filed a putative class action against SCS.  As later amended, the complaint alleged violations of California wage and hour laws, breach of contract, breach of the covenant of good faith and fair dealing, and unfair business practices on behalf of themselves and current and former SCS drivers "including but not limited to those misclassified as independent contractors."

SCS responded by moving to compel arbitration.  It acknowledged that the FAA exempts from arbitration employment contracts  " 'any . . . class of workers engaged in foreign or interstate commerce' " (9 U.S.C. § 1 (hereafter section 1)), but asserted the Joneses did not qualify for the exemption because "there is no evidence establishing that they crossed into California to make deliveries on behalf of SCS, as they allege in the first amended complaint.  Any argument that their intrastate operations qualify as 'engaged in interstate commerce,' will fail. . . ."

Based on Seguerra's declaration and supporting records, SCS asserted it had no records indicating the Joneses made any pickups or deliveries outside of Arizona during the relevant period and that the absence of documentation established they made none.  It further argued the Joneses were not "engaged in interstate commerce" for purposes of the section 1 exemption because (1) they were contracted to provide only same-day local courier service; and (2) SCS customers stored goods for potential sale in SCS warehouses, which removed them from the flow of interstate commerce.  SCS submitted the Joneses' electronic records showing only deliveries within Arizona, albeit including numerous pickups from and deliveries to the Phoenix Sky Harbor Airport.  Seguerra attested that these records established that all deliveries associated with Sue's vendor numbers were solely within Arizona.  In a subsequent declaration Seguerra added that SCS

3

couriers made only 17 deliveries from Arizona to California during the relevant period, and that none of those deliveries were undertaken by the Joneses.

In opposition, the Joneses asserted they qualified for the section 1 exemption because they made deliveries for SCS across state lines. Supporting declarations from Sue and Robert stated: "[w]hile working for Defendants my spouse and I made deliveries to locations in California on a regular basis, doing so at the specified direction of the Defendants. Specifically, we made deliveries to Defendants' own warehouses in San Francisco California and Downtown Los Angeles, California. Some of these deliveries in California were also directly to the Defendants' customers, for instance the hospital in Redlands, California. These deliveries like all the work . . . my spouse and I completed for Defendants were on demand, same day deliveries, not part of a route. We also made deliveries to several other states including, but not limited to New Mexico and Texas." The Joneses also relied on *Nieto v. Fresno Beverage Co., Inc.* (2019) 33 Cal.App.5th 274 (*Nieto*) and similar cases to assert the exemption applied whether or not they crossed state lines because the goods they delivered in Arizona were within the flow of interstate commerce.[3]

Following a contested hearing, the trial court denied SCS's motion. Its written order explains: "The arbitration agreement . . . expressly provides that the parties' agreement is subject to the FAA. [Citation.] Section 1 of the FAA provides that 'nothing herein contained shall apply to contracts of

---

[3] In addition, the Joneses contend the arbitration agreement was unenforceable under Arizona law and that it was procedurally and substantively unconscionable. We need not address those claims in light of our determination that the section 1 exemption applies.

4

employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.' (9 U.S.C. §1; see *New Prime, Inc. v. Oliveira,* 139 S.Ct. 532, 538-539 (2019) [truck driver engaged in interstate commerce and was exempt from arbitration under the FAA].)  Courts generally recognize two ways workers can establish that they engaged in interstate commerce: (1) showing they actually crossed state lines to deliver goods; or (2) that they were directly involved in the practical continuity of movement of goods in interstate commerce.  (*Muller v. Roy Miller Freight Lines, LLC* (2019) 34 Cal.App.5th 1056, 1068-1069; *Nieto v. Fresno Beverage Co., Inc.* (2019) 33 Cal.App.5th 274, 279-284 [even though delivery truck driver's deliveries were exclusively to destinations within California, he was engaged in interstate commerce through his participation in the continuation of the movement of interstate goods to their destination].)  'If a truck driver physically transports goods across state lines, he or she undoubtedly qualifies as a transportation worker under section 1.' (*Id.* at 1065.)  In this case, plaintiffs made deliveries from Arizona to multiple states including California, Texas, and New Mexico.  (Sue Jones Decl. 7; Robert Allen Jones Decl. 7).  This evidence establishes that the transportation worker exemption applies and plaintiffs are not obliged to arbitrate.  Defendants do not convincingly demonstrate that these declarations are perjurious and unworthy of credence.  In any event, 'a transportation worker does not necessarily have to physically cross state lines in order to engage in the movement of goods in interstate commerce.' (*Nieto,* 33 Cal.App.5th at 282.)"

SCS filed a motion for reconsideration, but when it then appealed the underlying order before the motion was heard the court ordered it off calendar because it no longer had jurisdiction over the matter.  The court's order, which was captioned as a denial, further observed that "there is a

substantial body of authority holding that delivery workers who transport packages through to the conclusion of their journeys in interstate and foreign commerce are exempt from the FAA as transportation workers engaged in interstate commerce, even if the drivers transport goods wholly within the boundaries of a single state."

This appeal is timely.

## DISCUSSION

### I. *Legal Framework*

The issue here is whether the Joneses fall within the section 1 exemption for "contracts of employment of seamen, railroad employees, *or any other class of workers* engaged in foreign or interstate commerce." (section 1, italics added.) "[A]ny other class of workers," as used in section 1, refers exclusively to "workers ' "actually engaged in the movement of goods in interstate commerce." ' " (*Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 112, 119.)

A party moving to compel arbitration "bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense. [Citation.]" (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 (*Engalla*).) Accordingly, a party claiming the section 1 exemption bears the burden of proving it applies. (*Performance Team Freight Systems, Inc. v. Aleman* (2015) 241 Cal.App.4th 1233, 1241 (*Performance Team Freight Systems*).) Any doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration. (*Ibid.*)

On review, an order denying a petition to compel arbitration is presumed to be correct "and all intendments and presumptions are indulged

6

to support the order on matters as to which the record is silent." (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 88.) " 'When a trial court's order [denying a petition to compel arbitration] is based on a question of law, we review the denial de novo. [Citation.] Decisions on issues of fact are reviewed for substantial evidence. [Citation.]' " (*Muller v. Roy Miller Freight Lines, LLC* (2019) 34 Cal.App.5th 1056, 1061 (*Muller*); *Nieto, supra,* 33 Cal.App.5th at p. 279.)

## II. The Trial Court Correctly Found the Exemption Applied

Here, as expressed in its order, the trial court found the FAA exemption applied because the Joneses made deliveries across state lines and were therefore engaged in interstate commerce. Further, although without basing its ruling on this additional point, the court indicated the Joneses at least likely fell within the exemption even if they made only *intra*state deliveries because they transported goods that were within the flow of interstate commerce.

We start with the court's factual finding that the Joneses made deliveries from Arizona to multiple states including California, Texas, and New Mexico. The order makes plain that the trial court gave credence to the Joneses' declaration testimony over Seguerra's conflicting testimony and supporting documentation that, in effect, SCS's records proved the Joneses made only intrastate deliveries for the company.

We may not disturb this credibility determination. Applying the substantial evidence standard, "we must consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the judgment. [Citations.] [¶] It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact. Our authority begins and

7

ends with a determination as to whether, on the entire record, there is any substantial evidence, contradicted or uncontradicted, in support of the judgment. Even in cases where the evidence is undisputed or uncontradicted, if two or more different inferences can reasonably be drawn from the evidence this court is without power to substitute its own inferences or deductions for those of the trier of fact, which must resolve such conflicting inferences in the absence of a rule of law specifying the inference to be drawn. We must accept as true all evidence and all reasonable inferences from the evidence tending to establish the correctness of the trial court's findings and decision, resolving every conflict in favor of the judgment. [Citations.]

"We emphasize that the test is *not* the presence or absence of a substantial conflict in the evidence. Rather, it is simply whether there is substantial evidence in favor of the respondent. If this 'substantial' evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld. As a general rule, therefore, we will look only at the evidence and reasonable inferences supporting the successful party, and disregard the contrary showing. [Citations.] In short, even if the judgment of the trial court is against the weight of the evidence, we are bound to uphold it so long as the record is free from prejudicial error and the judgment is supported by evidence which is 'substantial,' that is, of ' "ponderable legal significance," ' ' "reasonable in nature, credible, and of solid value . . . ." ' [Citations.]" (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630-631 (*Howard*); *Engalla, supra,* 15 Cal.4th at p. 972.)

Faced with conflicting evidence and the otherwise inescapable conclusion to be drawn from applying the substantial evidence test to it, SCS asserts the trial court erred *as a matter of law* by placing on it the burden to

"convincingly" prove the exemption did *not* apply, rather than requiring the Joneses to prove that it did. (See *Performance Team Freight Systems, supra,* 241 Cal.App.4th at p. 1241.) While acknowledging, at least initially, that the trial court's order does not show such an error,[4] SCS argues the court exposed the purported misperception of the law during the following colloquy: "The Court: Well, isn't it your burden to show on a motion to compel arbitration that there is an enforceable and valid arbitration agreement subject to the FAA?" [¶] [SCS's counsel]: And, in fact, we have. But pursuant to—so, pursuant to [*Performance Team Freight Systems*] . . . . 'The party opposing arbitration bears the burden of demonstrating that the exemption applies.'"

We reject this argument. Neither the court's question nor counsel's answer gives any indication the court failed to understand the parties' relative burdens. Nor does anything in the record support SCS's further claim that the trial court simply failed to weigh the evidence. Absent evidence to the contrary, "[i]t is a basic presumption indulged in by reviewing courts that the trial court is presumed to have known and applied the correct statutory and case law in the exercise of its official duties." (*People v. Mack* (1986) 178 Cal.App.3d 1026, 1032.) Essentially, SCS's argument is that the court's rejection of its own view of the evidence shows the court misapplied the burden of proof. That, of course, is not how it works. If a court's disagreement with a litigant's assessment of the evidence were sufficient to

___

[4] SCS apparently changed its view on this in time for its reply brief, where it asserts the court's comment that SCS did not "convincingly demonstrate" the Jones declarations were "perjurious and unworthy of credence" shows it placed the burden on SCS to prove the exemption did not apply. In our view, the comment does nothing more than explain the court's credibility assessment; by no means does it indicate any misapprehension as to the relevant burdens of proof.

9

show a failure to apply the correct burden, substantial evidence review would be meaningless.

SCS's remaining challenge to the dispositive finding that the Joneses made deliveries to other states merely invites us to reweigh the court's credibility assessment as between Seguerra and the Joneses' "self-serving" declarations. We must decline. " 'With rhythmic regularity it is necessary for us to say that where the findings are attacked for insufficiency of the evidence, our power begins and ends with a determination as to whether there is *any* substantial evidence to support them; that we have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom. No one seems to listen.' " (9 Witkin, Cal. Procedure (5th ed. 2020) Appeal, § 365, quoting *Overton v. Vita-Food Corp.* (1949) 94 Cal.App.2d 367, 370; *Arnesen v. Raymond Lee Organization, Inc.* (1973) 31 Cal.App.3d 991, 995 (*Arnesen*).) Here, the Joneses' declarations were sworn under penalty of perjury and not inherently unbelievable. That they were uncorroborated does not, as SCS argues, compel the conclusion that they amounted to "a mere scintilla of evidence" insufficient to withstand substantial evidence review.

SCS goes further, asking not only that we re-weigh the evidence, but that in so doing we take into account "new facts presented through [their motion for] reconsideration," which they argue cast doubt on the Joneses' veracity. As SCS acknowledges, the trial court did not consider this "new evidence" in ruling because it lost jurisdiction over the matter before the reconsideration motion came on for hearing. "As a general rule, documents and facts not before the trial court cannot be included as part of the record on

10

appeal." (*Foster v. Civil Service Com.* (1983) 142 Cal.App.3d 444, 449; *In re Zeth S.* (2003) 31 Cal.4th 396, 405; *Arnesen, supra,* 31 Cal.App.3d at p. 995.)

In sum, the court's determination the section 1 exemption applied because the Joneses made deliveries across state lines is supported by substantial evidence. This conclusion is required by the relevant standard of review, so we need not decide whether, on these specific facts, the Joneses are *also* exempt from arbitration pursuant to *Nieto, supra,* 33 Cal.App.5th 274, 282, and other similar cases. However, like the trial court, we find *Nieto* worthy of note. The defendant there, VWB, imported beverages from out of state to its warehouses in California and, shortly after that, to its California customers. The *Nieto* court concluded the plaintiff, one of VWB's local delivery drivers, was engaged in interstate commerce because his deliveries, "although intrastate, were essentially the last phase of a continuous journey of the interstate commerce (i.e., beer and other beverages delivered to VWB's warehouse from out-of-state) being transported until reaching its destination(s) to VWB's customers." (*Id.* at p. 284.) A number of other courts, including this one, have recently reached the same conclusion on similar facts. (See *Betancourt v. Transportation Brokerage Specialists, Inc.* (2021) 62 Cal.App.5th 552, 558-561; *Muller, supra,* 34 Cal.App.5th 1056; *Rittman v. Amazon.com, Inc.* (9th Cir. 2020) 971 F.3d 904, 915-919 (*Rittman*); *Waithaka v. Amazon.com, Inc.* (1st Cir. 2020) 966 F.3d 10, 26.)

SCS argues the situation at hand is factually distinct, primarily in that at least some goods arrive at its warehouse without an intended final recipient and remain there for an indefinite period. Therefore, it asserts, "the interstate movement of any goods stored in [its] warehouses ended when such

11

goods reached the warehouse."[5]  (See *A.L.A. Schechter Poultry Corporation v. United States* (1935) 295 U.S. 495, 542-543 [live poultry shipped from out of state "[came] to a permanent rest" when they reached slaughterhouse for slaughter and sale to local retailers; compare *Rittman, supra,* 971 F.3d at p. 916 and fn. 5 [Amazon's interstate transactions do not conclude when packages arrive at Amazon warehouses].)  As resolution of this point has no bearing on the outcome here, examination of the validity and reach of SCS's position must remain for another day.

In light of our conclusion that substantial evidence supports the court's finding the Joneses made interstate deliveries for SCS, we also do not address SCS's contention that the trial court misconstrued the section 1 exemption to apply simply because SCS engages in interstate commerce.  For the same reason, we need not resolve the parties' disputes about the enforceability of the arbitration agreement as against either or both of the Joneses.

## DISPOSITION

The order denying the motion to compel arbitration is affirmed.  Costs on appeal are awarded to the Joneses.

---

[5] SCS does not address how this argument would apply to the numerous deliveries its records indicate the Joneses made to the Phoenix airport other than to assert there is no evidence any of those goods were intended for out-of-state air transport, rather than for use *at* the airport. While the point is not critical here, we observe that trial courts are entitled to draw reasonable inferences from the evidence.  (*Howard, supra,* 72 Cal.App.4th at p. 631.)

_____
Wiseman, J.*

WE CONCUR:


_____
Petrou, Acting P.J.


_____
Jackson, J.

*Jones v. UPS Supply Chain Solutions*, A160726

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.