Filed 5/14/24  Peters v. SDLA Courier Service CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| SAMANTHA PETERS,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SDLA COURIER SERVICE, INC.<br><br>    Defendant and Appellant. | 2d Civil No. B330142<br>(Super. Ct. No. 56-2023-00574362-CU-OE-VTA)<br>(Ventura County) |

　　　　Appellant SDLA Courier Service, Inc. appeals from an order denying its motion to compel respondent Samantha Peters to arbitrate wage and hour claims pursuant to an arbitration provision in her employment agreement.  (Code Civ. Proc., § 1294, subd. (a).)  SDLA contends the trial court erred in finding that the transportation worker exemption of section 1 of the Federal Arbitration Act (FAA) (9 U.S.C. § 1) applied, thereby precluding compelled arbitration.  We affirm.

FACTS AND PROCEDURAL HISTORY

SDLA is a delivery company in Southern California and "makes local-only deliveries in California for its clients." One of its clients is Amazon Logistics, Inc. SDLA drivers pick up packages at Amazon warehouses in California and deliver them locally to customers.

Peters worked for SDLA from September 2018 to July 2019. She was hired as a delivery driver and also worked as a dispatcher.[1] She, like other SDLA delivery drivers, only picked up and delivered packages within California.

When Peters was hired, she signed a Mutual Agreement to Arbitrate Claims (Agreement). The Agreement requires that the employee and employer arbitrate all claims or controversies. It states: "[T]he Company is engaged in transactions involving interstate commerce and . . . my employment involves such commerce. As such, I acknowledge that this Agreement is subject to the Federal Arbitration Act."

Peters filed a lawsuit against SDLA, asserting individual and putative class claims for alleged wage and hour violations. SDLA moved to compel arbitration of her individual claims.[2] SDLA argued that the FAA applied to the Agreement and that the transportation worker exemption under section 1 of the FAA

_____

[1] To the extent the parties dispute whether Peters was a delivery driver throughout her employment, the trial court found Peters was a driver. We defer to the trial court's factual finding. (See *Bell v. H.F. Cox, Inc.* (2012) 209 Cal.App.4th 62, 80.)

[2] SDLA also moved to dismiss the putative class claims and stay the proceedings, but those orders are not challenged in this appeal.

was inapplicable. The trial court denied the motion, finding that the section 1 exemption to the FAA applied. The court found Peters to be a "last-leg Amazon delivery driver[]" who is "considered to be [a] transportation worker[] under the FAA exemption."

DISCUSSION

SDLA contends the trial court erred in finding that Peters, as a driver, was "engaged in . . . interstate commerce" and that the transportation worker exemption (9 U.S.C. § 1) applied. We disagree.

Because the trial court's order denying the motion to compel arbitration was based on the legal question of whether the FAA applies, we review the order de novo. (*Nieto v. Fresno Beverage Co., Inc.* (2019) 33 Cal.App.5th 274, 279 (*Nieto*); *Betancourt v. Transportation Brokerage Specialists, Inc.* (2021) 62 Cal.App.5th 552, 559 (*Betancourt*).)

Section 2 of the FAA provides that contracts "evidencing a transaction involving commerce to settle by arbitration" "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) Thus, in most cases, the FAA mandates arbitration when contracts involving interstate commerce contain an arbitration provision.

But section 1 of the FAA provides an exemption from FAA coverage "to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." (9 U.S.C. § 1.) In determining whether a class of workers are "engaged in foreign or interstate commerce," the inquiry focuses on the worker and the work they perform. (*Southwest Airlines Co. v. Saxon* (2022) 596 U.S. 450, 455-456

3

(*Saxon*).)  The United States Supreme Court in *Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 119-121, interpreted the phrase "any other class of workers engaged in foreign or interstate commerce" to refer to "transportation workers" only, and not employees generally.  The Court did not "provide a complete definition of 'transportation worker,' [but it] indicated that any such worker must at least play a direct and 'necessary role in the free flow of goods' across borders" or be "actively 'engaged in transportation' of those goods across borders via the channels of foreign or interstate commerce." (*Saxon*, at p. 458.)

The question here is whether delivery drivers such as Peters, who worked for an intrastate delivery company, are exempt from the FAA coverage under the transportation worker exemption.  Our colleagues in the First District decided a similar issue in *Betancourt*, *supra*, 62 Cal.App.5th 552.  There, the plaintiff was a delivery driver for a company that did the " 'last-mile delivery,' " primarily for its client, Amazon.com, Inc. (*Id*. at p. 560.)  The drivers would pick up the Amazon packages from warehouses and deliver them to Amazon customers who lived locally. (*Ibid*.)  The packages originated from various locations within the United States and even foreign countries, and there was nothing to indicate that the plaintiff was delivering only packages originating in California.  (*Id*. at p. 561.)  The court held that the plaintiff was exempt from FAA coverage under the transportation worker exemption because the deliveries " 'were essentially the last phase of a continuous journey of the interstate commerce' " for the out-of-state packages to reach their destination to the customer.  (*Id*. at p. 559.)  Thus, the plaintiff "was 'engaged in interstate commerce through his

4

participation in the continuation of the movement of interstate goods to their destinations.' " (*Ibid*.)

We agree with *Betancourt* and conclude that Peters was also engaged in interstate commerce when she participated in the last leg of the delivery of out-of-state packages. (*Betancourt*, *supra*, 62 Cal.App.5th at pp. 559, 561.) Contrary to SDLA's argument, it is inconsequential that Peters and SDLA delivered only within the state of California. An employee does not need to cross state lines for the exemption to apply. (See *Saxon*, *supra*, 596 U.S. at 461 [concluding that airplane cargo loaders, who do not cross state or international boundaries, are exempt from the FAA]; *Nieto*, *supra*, 33 Cal.App.5th at p. 284 [holding that a delivery driver who only made intrastate deliveries fell within the transportation worker exemption because he delivered beverages originating from out of state].) Peters's delivery of Amazon packages to its final destination played "a direct and 'necessary role in the free flow of goods' across borders." (*Saxon*, at p. 458.) Without last-leg delivery drivers, such as Peters, the transportation of these packages would be incomplete.

Our conclusion is consistent with the Ninth Circuit's decision in *Rittmann v. Amazon.com, Inc.* (9th Cir. 2020) 971 F.3d 904 (*Rittmann*). There, the Ninth Circuit held that a "last-mile" delivery driver contracted by Amazon was exempt from the FAA. (*Rittmann*, at p. 921.) The court interpreted the phrase "engaged in interstate or foreign commerce," as used in section 1 of the FAA, to include transportation workers employed to deliver goods that originate out of state to an in-state destination. (*Rittmann*, at p. 910.) The court observed the packages do not come to rest at Amazon warehouses. (*Id*. at p. 916.) Delivery providers, such as the plaintiff, pick up the

packages from warehouses and transport them for the last leg to their destination. The interstate transaction does not conclude until the packages are delivered. (*Id*. at pp. 915-916.) Thus, the drivers are "engaged in the movement of interstate commerce" because their "transportation of goods wholly within a state are still a part of a continuous interstate transportation." (*Ibid*.)

SDLA attempts to distinguish *Rittmann* by arguing that SDLA is a purely intrastate delivery company and not engaged in interstate commerce. We are not persuaded. In our view, Peters and SDLA were engaged in interstate commerce. SDLA drivers performed the last-mile delivery of out-of-state packages to their final destination and were thus "still a part of a continuous interstate transportation." (*Rittmann, supra*, 971 F.3d at p. 916.)

DISPOSITION

The judgment is affirmed. Respondent shall recover costs on appeal.

<u>NOT TO BE PUBLISHED.</u>



BALTODANO, J.


We concur:



GILBERT, P. J.



YEGAN, J.

6

Benjamin F. Coats, Judge

Superior Court County of Ventura

_____

Ogletree, Deakins, Nash, Smoak & Stewart, Tim L. Johnson and Nikolas T. Djordjevski for Defendant and Appellant.

Justice Law Corporation, Douglas Han, Shunt Tatavos-Gharajeh, Lawrence W. Beall and Christopher Petersen for Plaintiff and Respondent.